**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

NORTH AMERICA PHOTON
INFOTECH, LTD

              Plaintiff,

v.

DISCOVERORG, LLC,

              Defendant.

<span style="color:red">**CONTAINS CONFIDENTIAL
MATERIALS FILED UNDER SEAL**</span>

Civil Action No. 1:20-cv-02180-JSR

## DISCOVERORG, LLC'S [CORRECTED] MEMORANDUM
## OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Oren J. Warshavsky, Esq.
Carrie A. Longstaff, Esq.
Megan A. Corrigan, Esq.
BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Defendant
DiscoverOrg, LLC*

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...................................................................................1

STATEMENT OF FACTS .........................................................................................2

PROCEDURAL HISTORY........................................................................................12

LEGAL STANDARD................................................................................................12

ARGUMENT .............................................................................................................14

I.      POINT ONE: PHOTON BREACHED THE EULA ........................................14

          A.     THE PARTIES ENTERED INTO A VALID WRITTEN CONTRACT.............14

          B.     DISCOVERORG PERFORMED ITS OBLIGATIONS UNDER THE EULA ...................................................................................................14

          C.     THERE IS NO GENUINE DISPUTE THAT PHOTON BREACHED THE CONTRACT .........................................................................................16

          D.     DISCOVERORG WAS DAMAGED BY PHOTON'S BREACH .......................18

II.     POINT TWO: PHOTON WAS UNJUSTLY ENRICHED BY ITS UNAUTHORIZED USE OF DISCOVERORG'S DATA ................................................19

III.    POINT THREE: PHOTON'S BREACH OF CONTRACT CLAIM MUST BE DISMISSED .........................................................................................................20

CONCLUSION...........................................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)..............................................................................................11

*Aslanidis v. U.S. Lines, Inc.*,
  7 F.3d 1067 (2d Cir. 1993).....................................................................................12

*Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc.*,
  448 F.3d 573 (2d Cir. 2006)...................................................................................17

*Bouboulis v. Transp. Workers Union of Am.*,
  442 F.3d 55 (2d Cir. 2006).....................................................................................11

*Caldarola v. Calabrese*,
  298 F.3d 156 (2d Cir. 2002)...................................................................................12

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986)...............................................................................................11

*Conway v. Microsoft Corp.*,
  414 F. Supp. 2d 450 (S.D.N.Y. 2006).....................................................................11

*Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of New York*,
  375 F.3d 168 (2d Cir. 2004)...................................................................................12

*Globecon Grp., LLC v. Hartford Fire Ins. Co.*,
  434 F.3d 165 (2d Cir. 2006)...................................................................................11

*Harsco Corp. v. Segui*,
  91 F.3d 337 (2d Cir. 1996)...............................................................................12, 13

*Huminski v. Corsones*,
  396 F.3d 53 (2d Cir. 2004).....................................................................................11

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986)...............................................................................................12

*McClellan v. Smith*,
  439 F.3d 137 (2d Cir. 2006)...................................................................................12

*Merrill Lynch & Co. v. Allegheny Energy, Inc.*,
  500 F.3d 171 (2d Cir. 2007)...................................................................................13

*Mitchell v. Shane*,
   350 F.3d 39 (2d Cir. 2003)......................................................................................11

*Musket Corp. v. PDVSA Petroleo, S.A.*,
   512 F. Supp. 2d 155 (S.D.N.Y. 2007).....................................................................12

*Nat'l Mkt. Share, Inc. v. Sterling Nat'l Bank*,
   392 F.3d 520 (2d Cir. 2004)....................................................................................12

*Powell v. Nat'l Bd. of Med. Exam'rs*,
   364 F.3d 79 (2d Cir. 2004)......................................................................................11

*Stuart v. Am. Cyanamid Co.*,
   158 F.3d 622 (2d Cir. 1998)....................................................................................11

*Terwilliger v. Terwilliger*,
   206 F.3d 240 (2d Cir. 2000)....................................................................................12

*Tractebel Energy Mktg. Inc. v. AEP Power Mktg. Inc.*,
   487 F.3d 89 (2d Cir. 2007)......................................................................................16

*Vermont Teddy Bear Co. v. 1-800 Beargram Co.*,
   373 F.3d 241 (2d Cir. 2004)....................................................................................11

*Washington v. Kellwood Co.*,
   No. 05 Civ. 10034 (MHD), 2015 WL 6437456 (S.D.N.Y. Oct. 14, 2015) .............16

*Williams v. Utica Coll. of Syracuse Univ.*,
   453 F.3d 112 (2d Cir. 2006)....................................................................................11

**Rules**

Fed. R. Civ. P. 56..........................................................................................................1, 11

Fed. R. Civ. P. 56(a)........................................................................................................11

Fed. R. Civ. P. 56(c)........................................................................................................11

Defendant DiscoverOrg, LLC ("DiscoverOrg") submits this [Corrected] Memorandum of Law in Support of its Motion for Summary Judgment under Federal Rule of Civil Procedure 56, in DiscoverOrg's favor on: (i) its breach of contract counterclaim against North America Photon Infotech Ltd. ("Photon"), or, in the alternative its counterclaim for unjust enrichment and (ii) Photon's breach of contract claim against DiscoverOrg.

## PRELIMINARY STATEMENT

This is a simple breach of contract claim, ripe for summary judgment, as salient facts are undisputed. The parties agree that the contract between them—comprised of an Order, exhibit and End User License Agreement (collectively, the "EULA")—is a valid, enforceable, contract, that accurately and unambiguously sets forth the parties' rights and obligations.

Under the EULA, DiscoverOrg was to provide Photon access to its database and the data was required to be 95% accurate. Photon was required to keep the data to itself and, upon the EULA's termination, cease using and destroy all of DiscoverOrg's data. The parties agree that DiscoverOrg granted Photon access to its database, that Photon used the database, that DiscoverOrg's data was more than 95% accurate and that Photon continued using DiscoverOrg's data after the EULA's termination. By DiscoverOrg's calculation, the data was more than 99.9986% accurate; by Photon's calculation, the DiscoverOrg's data was over 99.6% accurate.

As the EULA was ending, the parties began negotiating a new contract and Photon was given additional access and download rights to DiscoverOrg's database. But during those final days, rather than negotiating, Photon was busy at work trying to copy as much as it could, downloading 25 million records. It comes as no surprise that rather than deleting that data as the EULA required, Photon continued using it. When Photon was caught—and DiscoverOrg still was trying to work out a commercial relationship—Photon claimed it was allowed to do so.

Then, rather than renewing the relationship or owning up to its theft, Photon did what any charlatan would: it went on the offensive arguing that it was DiscoverOrg, not Photon, that had breached the EULA.

Recognizing that its argument was a failing one, Photon contrived an extra contractual provision—which it has never articulated—that it claims DiscoverOrg breached. According to Phton, because DiscoverOrg's security features rendered .0014% of the data downloaded by Photon "not genuine," it was Photon, not DiscoverOrg, that was damaged. Remarkably, while Photon raised this specious argument as a basis for its breach, when DiscoverOrg would not accept it, Photon brought a lawsuit—in California State Court where no party resides—repeating the claim for its *in terrorem* effect. Unfortunately, it propagates that argument here.

There is no dispute of material fact. DiscoverOrg abided by its obligations under the EULA—and Photon cannot show a provision it believes breached—and Photon did not. Summary judgment is appropriate.

## **STATEMENT OF FACTS**

*DiscoverOrg*

Founded in 2007, DiscoverOrg is a subscription-based provider of business-to-business marketing data, as defined in Section 1.2 of the EULA, which it delivers to clients through a password-secured online user interface. (Defendant's Rule 56.1 Statement of Material Facts In Support of Defendant's Motion for Summary Judgment ("Def. 56.1" ¶ 1); September 25, 2020 Declaration of Derek Smith ("Smith Decl.") at ¶ 2). A subscriber can query DiscoverOrg's database to access business profiles, contacts, organizational charts, and other valuable information for businesses in the United States and globally, *i.e.* "Licensed Materials."

Information can be accessed live on DiscoverOrg's platform online, and records can be exported for local use.  (Def. 56.1 ¶ 2; Smith Decl. ¶ 2).

DiscoverOrg works hard to protect the integrity of its database and invests millions of dollars annually to enhance and maintain its database.  (Def. 56.1 ¶ 3; Smith Decl. ¶ 3). DiscoverOrg's database is a valuable asset, which it polices by monitoring the use of its Licensed Materials, identifying unauthorized and/or improper uses—including resale, third-party misappropriation, and usage by former licensees after the conclusion of a license term—and bringing claims against these individuals and entities when necessary.  (Def. 56.1 ¶ 4; Smith Decl. ¶ 6).  REDACTED

<span style="color:red">REDACTED</span>

(*Id.*).

<span style="color:red">REDACTED</span>

*The Parties' Agreement*

Photon and DiscoverOrg entered into the EULA on May 11, 2017.  (Def. 56.1 ¶ 15; Smith Decl. Exh. 1).  Under the EULA, Photon was granted access to use DiscoverOrg's database for Photon's sales, marketing, recruiting, and business development purposes.  (Def. 56.1 ¶ 16; Smith Decl. Exh. 1).  Hoping for a long-term beneficial relationship that would extend beyond the initial 12-month term, DiscoverOrg provided Photon a <span style="color:red">REDACTED</span>

(Def. 56.1 ¶¶ 17–18; Smith Decl. Exh. 1, P 1).

*DiscoverOrg's Performance*

Under Section 5 of the EULA, DiscoverOrg was to provide Photon access to DiscoverOrg's database.  (Def. 56.1 ¶¶ 19–22; Smith Decl. Exh. 1).  As Photon's own complaint here admits, Photon accessed and used that database.  (Photon's Second Amended Compl. ("SAC") ¶ 13; Def. 56.1 ¶ 23; September 25, 2020 Declaration of Oren Warshavsky ("Warshavsky Decl.") at Exh. 19 at 2-3 (Response to Request to Admit Nos. 2-3)).  In point of

fact, over the course of one year, Photon accessed the database to export over 45 million records from DiscoverOrg's database. (Def. 56.1 ¶ 24; Smith Decl. Ex. 13; Warshavsky Decl. Ex. 29). DiscoverOrg was also obligated under Section 5 to ensure that these Licensed Materials were 95% accurate. (Def. 56.1 ¶ 25; Smith Decl. Exh. 1). If Photon had an issue with the data's accuracy, Photon was required to advise DiscoverOrg if the Licensed Materials were not 95% accurate, and if DiscoverOrg could not "achieve 95% accuracy within 30 days," Photon had the right to terminate the EULA. (*Id.*). During the EULA's term, Photon never once complained about the accuracy of the Licensed Materials. (Def. 56.1 ¶ 26; Smith Decl. at ¶ 5).

*Expiration of the Contract*

In April 2018, about a month before the EULA's expiration, DiscoverOrg and Photon discussed renewal. (Def. 56.1 ¶ 27; Smith Decl. at Ehxs. 8-10). While Photon's ability to download the Licensed Materials should have ended on April 11, 2018, thirty days prior to the end of the EULA's term, DiscoverOrg allowed Photon to continue to have download capabilities through early May, and even extended Photon's access to the DiscoverOrg database until May 16. (Def. 56.1 ¶¶ 28–29; Smith Decl. Exh. 1; Warshavsky Dec. Exh. 24). DiscoverOrg did so because the parties' renewal negotiations were still ongoing, and DiscoverOrg believed Photon would be renewing. (Def. 56.1 ¶ 29; Smith Decl. Exhs. 8-10; Warshavsky Decl. Exh. 24).

What followed was a game of cat and mouse: DiscoverOrg methodically followed up with Photon, which, when pressed, would, indicate it was seeking further approvals. (Def. 56.1 ¶¶ 30–31; Smith Decl. Exh. 11; Warshavsky Decl. Exhs. 25-28). Between May 1 and May 12, 2018, when its right to download data would have already ceased but for its "negotiation," Photon downloaded 25 million records from DiscoverOrg's database. (Def. 56.1 ¶¶ 29, 32; Smith Decl. Exh. 14; Warshavsky Decl. Exh. 24). This final download resulted in DiscoverOrg

shutting down Photon's export functionality on or about May 9, 2020. (Def. 56.1 ¶ 33;Warshavsky Decl. Exh. 24).

Not surprisingly, after downloading these records, Photon decided not to renew the EULA. Photon claims that it chose not to renew because it "did not see any improvements in its sales and marketing efforts following its use of the data DiscoverOrg provided." (Def. 56.1 ¶ 36; Warshavsky Decl. Exh. 20 at 3 (Interrogatory Response No. 5)). However, Michael Levine of Photon, who was negotiating with DiscoverOrg at the time, said that he was comfortable with DiscoverOrg's data and then was waiting on Photon's CTO. (Def. 56.1 ¶ 31;Warshavsky Decl. Exhs. 25-28). However, even after the termination of the EULA on May 10, 2018, Photon continued using DiscoverOrg's platform and was insistent on maintaining its access right up until the very last day of extended access on May 16, 2018. (Def. 56.1 ¶¶ 34–35;Smith Decl. Exhs. 9-10). For example, on that last day, Photon was demanding that DiscoverOrg fix Photon's inability to login into the DiscoverOrg's website ASAP. (Def. 56.1 ¶ 35;Smith Decl. Exhs. 9-10)

*Photon's Breach*

Once the EULA expired, Section 4.2 required Photon to cease using the Licensed Materials. (Def. 56.1 ¶ 37; Smith Decl. Exh. 1). Section 7.2 of the EULA provided that upon the EULA's expiration, Photon was also required to "destroy any and all copies of Licensed Materials and any information it ha[d] obtained from the Licensed Materials, whether in hard copy or electronic form." (Def. 56.1 ¶ 38; Smith Decl. Exh. 1). But, as stated above, Photon used the end of the EULA's term to raid DiscoverOrg's database and download over 25 million records, clearly, it had different aims.

As DiscoverOrg was continuing to negotiate in good faith a renewal of the EULA, on August 20, 2018, it informed Photon that, Photon was still using the Licensed Materials, which were supposed to be removed and deleted from Photon's system.  (Def. 56.1 ¶ 40; Smith Decl. Exh. 12; Warshavsky Decl. Exh. 23).  Photon responded to DiscoverOrg's August 2018 notice claiming it was unaware that it was still using DiscoverOrg's data and requested further information.  (Def. 56.1 ¶ 41; Smith Decl. Exh. 12; Warshavsky Decl. Exhs. 19, 23).  DiscoverOrg provided examples of emails Photon sent, after the EULA's expiry, from photoninfotech.net REDACTED                                           (*Id.*).  Photon's reaction is telling.  In response, it apparently REDACTED

(Def. 56.1 ¶ 42; Smith Decl. Exh. 15).

On September 13, 2018, with DiscoverOrg still trying to work out a deal, DiscoverOrg explained that Photon had "consumed over 42 million records over the course of 4.5 months," and that it was willing to let Photon renew its contract with DiscoverOrg at the list price.  (Def. 56.1 ¶ 43; Warshavsky Decl. Exh. 29).  By the time of that email, Photon had been continuing to use the Licensed Materials, in violation of the EULA, for over 4 months.  Photon did not challenge the number of records it had consumed but responded by explaining that it would not continue to use DiscoverOrg's data and would not renew the EULA.  (Def. 56.1 ¶ 44; Warshavsky Decl. Exh. 2).

Photon admits that its use of DiscoverOrg's Licensed Materials extended beyond the EULA.  (Def. 56.1 ¶ 45; Warshavsky Decl. Exh. 20 at P 8 (Response to Interrogatory 17)).  At oral argument on June 5, 2020, when the Court asked Photon's counsel where the data was, Photon's counsel indicated that Photon destroyed the data as required by the EULA.  As Photon

was threatening litigation by September 2018, when it admitted the data was being used, it should have either preserved the data or the fact of its destruction. But as indicated, Photon continued REDACTED well after the EULA ended—and it defies credulity to suggest that it downloaded 25 million records just to delete them. And not surprisingly, Photon has failed to produce *any* evidence that it destroyed the Licensed Materials. (Def. 56.1 ¶ 39; Warshavsky Decl. at ¶ 4). Indeed, Photon continued to send REDACTED

(Def. 56.1 ¶ 46; Smith Decl. Exh. 15). As any charlatan might, Photon simply REDACTED

(Def. 56.1 ¶ 42; Smith Decl. Exh. 15). Though not all emails received are included here, as is readily apparent, Photon was using Licensed Materials to send email blasts as recently as August—sometimes several times each month. (Def. 56.1 ¶¶ 46–48; Smith Decl. Exh. 15). Photon's failure to remove the REDACTED

, coupled with Photon's failure to provide any evidence that the 45 million records in Photon's possession were destroyed, were a clear violation of the EULA. REDACTED Photon's marketing campaigns. Not only did Photon fail to provide evidence concerning those campaigns, Photon failed to produce the emails it continued to send DiscoverOrg. Photon continued to systematically use DiscoverOrg's data for three years after the anniversary of the EULA's expiration (May 2018-May 2019, May 2019-May 2020, May 2020 to present) and has not paid DiscoverOrg penny for these three years of use. (Def. 56.1 ¶ 48; Smith Decl. Exh. 15).

Photon further breached the EULA by sharing DiscoverOrg's data with a third party, Packyge Inc. ("Packyge") in breach of Section 4.2 of the EULA. Section 4.2 provides in relevant part that Photon "shall not redistribute, sublicense, transfer, sell, offer for sale, or

disclose any of the Licensed Materials to any third party." (Def. 56.1 ¶ 49; Smith Decl. Exh. 1).

REDACTED from Packyge. (Def. 56.1 ¶¶ 51–52, 55–57; Smith Decl. Exh. 2-7). Packyge REDACTED

(Def. 56.1 ¶ 58; Smith Decl. ¶ 12). REDACTED

(Def. 56.1 ¶ 50, 53–54; Smith Decl. ¶¶ 13, 17, 18). On January 9, 2018, one Photon user downloaded two data sets from DiscoverOrg's database. (Def. 56.1 ¶ 50; Smith Decl. ¶ 13) The first download included 33 records REDACTED (*Id.*). The second download included 77 records REDACTED (*Id.*).

On January 23, 2018, someone named Joe Thompson, with the email address joe@packyge.com, sent a promotional email on behalf of Packyge REDACTED

(Def. 56.1 ¶ 51; Smith Decl. ¶ 14 and Exh. 2). On February 2, 2018 and on February 22, 2018, DiscoverOrg received another promotional email on behalf of Packyge, this time from someone named Mark Thompson with the email address mark@packyge.com, REDACTED (Def. 56.1 ¶ 52; Smith Decl. ¶¶ 15-16 and Exhs. 3-4). On March 5, 2018, a Photon user downloaded two data sets from DiscoverOrg's database. (Def. 56.1 ¶ 53; Smith Decl. ¶ 18). The first download included 86 records REDACTED RE DA CTE D (*Id.*). The second download included 236 records REDACTED

(*Id.*).

On March 5, 2018, a second Photon user downloaded 34 records from DiscoverOrg's database REDACTED

9

REDACTED                    . (Def. 56.1 ¶ 54; Smith Decl. ¶ 18).  Thereafter, the same Packyge

employee, Mark Thompson, REDACTED

on March 6, 7, and 13, 2018,

respectively.  (Def. 56.1 ¶ 55–57; Smith Decl. ¶¶ 19-21 and Exhs. 5-7).  REDACTED

(Def. 56.1 ¶ 58; Smith Decl. ¶ 12).

Instead of taking responsibility for its breaches, Photon decided to contrive the argument

that the REDACTED  violated the EULA.  In fact, while DiscoverOrg was still trying to negotiate

a deal, Photon was trying to analyze different data sets to fashion a claim that DiscoverOrg

breached the contract.  Rather than looking at the over 45 million records it consumed, or even

just the 25 million records it downloaded at the end of the EULA, Photon looked at small data

sets to find errors REDACTED    . (Def. 56.1 ¶ 61; Warshavsky Decl. Exh. 22).  Photon did

its own analysis of very small subsets of data to try to cross the 5% inaccuracy threshold.  (*Id.*).

However, the highest percentage of inaccurate data it could find for any set was only 1.37%.

(*Id.*).  But this analysis—which still would not amount to a breach, is far too generous to

Photon's position.

When looking at the data on the aggregate, Photon claims that it only downloaded

259,480 records and that its investigation REDACTED            . (Def. 56.1 ¶ 62;

Warshavsky Decl. Exh. 20 at P 4-5 (Response to Interrogatories 8 and 10)).  Even if the Court

were to accept Photon's calculations at face value, it amounts to an accuracy rate 99.96%

accuracy (or 0.388% inaccuracy).  The percentage of inaccuracy only becomes smaller upon a

cursory examination of the underlying documents and data. Photon's own production shows

there were REDACTED                              .  (Def. 56.1 ¶ 63; Warshavsky Decl. Exh.

21).  Not surprisingly, in its rush to insulate itself and contrive a claim by reducing and

manipulating data sets, Photon was double counting various records.  However, the simple fact is

that no matter what combination of either party's calculations the Court uses, the outcome never

reaches close to 5% inaccuracy:

REDACTED

| Outcomes | Records Downloaded | Source for Records Downloaded | | % Inaccuracy |
|---|---|---|---|---|
| Outcome 1 | 259,480 | Amount Photon Claims in Interrogatory (*See* Warshavsky Decl. Exh. 20) | | 0.388% |
| Outcome 2 | 259,480 | Amount Photon Claims in Interrogatory (Warshavsky Decl. Exh. 20) | | 0.210% |
| Outcome 3 | 45 Million | Smith Decl. Exhibit 13 | | 0.002% |
| Outcome 4 | 45 Million | Smith Decl. Exhibit 13 | | 0.001% |

## PROCEDURAL HISTORY

Photon commenced this action in the Superior Court of California, County of San Francisco on December 3, 2018. (ECF No. 1-3). After Photon amended and served the summons and complaint (ECF No. 1-2), DiscoverOrg timely filed a notice of removal to the United States District Court for the Northern District of California. (*Id.*) On March 14, 2019, DiscoverOrg moved to dismiss the Complaint for lack of jurisdiction and improper venue. (ECF No. 5). The Court granted Photon's request for limited jurisdictional discovery, after which the matter was transferred to this Court. (ECF No. 26).

On April 7, 2020, Photon filed its Second Amended Compliant. (ECF No. 49). On May 1, 2020, DiscoverOrg moved to dismiss Photon's non-contract claims, (ECF No. 52), which the Court granted. (ECF No. 60). On June 22, 2020 DiscoverOrg answered Photon's Second Amended Complaint and asserted amended counterclaims for breach of contract and unjust enrichment. (ECF No. 61). Photon has not answered DiscoverOrg's amended counterclaims.

## LEGAL STANDARD

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). A court may grant summary judgment when there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Globecon Grp., LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165, 170 (2d Cir. 2006). A fact is considered "material" for purposes of Rule 56 if it "might affect the outcome of the suit under the governing law." *Bouboulis v. Transp. Workers Union of Am.*, 442 F.3d 55, 59 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Utica Coll. of*

*Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (quoting *Stuart v. Am. Cyanamid Co.*, 158 F.3d 622, 626 (2d Cir. 1998)).  *See also Mitchell v. Shane*, 350 F.3d 39, 47 (2d Cir. 2003).

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  *See also Conway v. Microsoft Corp.*, 414 F. Supp. 2d 450, 458 (S.D.N.Y. 2006).

The moving party bears the burden of showing that it is entitled to summary judgment. *Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2004); *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004).

Once the moving party has met its burden, the opposing party "'must demonstrate more than some metaphysical doubt as to the material facts' and come forward with 'specific facts showing that there is a genuine issue for trial.'"  *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 84 (2d Cir. 2004) (quoting *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir. 1993)).  *See also Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)); *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006).

# ARGUMENT

## I. POINT ONE: PHOTON BREACHED THE EULA

The EULA is subject to New York law. (cite). Under New York law, the elements of a breach of contract claim are: (1) the existence of an agreement; (2) performance of the contract by one party; (3) breach of contract by the other party; and (4) damages. *See Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of New York*, 375 F.3d 168, 177 (2d Cir. 2004); *Terwilliger v. Terwilliger*, 206 F.3d 240, 246 (2d Cir. 2000); *Musket Corp. v. PDVSA Petroleo, S.A.*, 512 F. Supp. 2d 155, 160 (S.D.N.Y. 2007). "One who violates his contract with another is liable for all the direct and proximate damages which result…" *Nat'l Mkt. Share, Inc. v. Sterling Nat'l Bank*, 392 F.3d 520, 525 (2d Cir. 2004) (internal quotation marks and citation omitted). DiscoverOrg's counterclaim meets all four elements: the parties entered into the EULA, DiscoverOrg performed its obligations under the EULA, Photon breached the EULA by sharing the Licensed Materials with a third-party and continuing to use DiscoverOrg's Licensed Materials after the EULA terminated, and DiscoverOrg was damaged by Photon's breach. DiscoverOrg is entitled to summary judgment.

### A. THE PARTIES ENTERED INTO A VALID WRITTEN CONTRACT

In order to have a breach of contract a valid agreement must exist. *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996). Neither party disputes that the EULA, is valid, enforceable, and governs their relationship. (SAC ¶¶ 11, 20).

### B. DISCOVERORG PERFORMED ITS OBLIGATIONS UNDER THE EULA

Recognizing that a party must meet its own obligations before it can ask the Court for relief, the second element of a breach of contract claim in New York is that the claimant has performed its obligations under the agreement. *Harsco Corp.*, 91 F.3d at 348. So long as the moving party has "substantially performed," the nonmoving party is not excused from its own

performance.  *See Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 500 F.3d 171, 186–87 (2d Cir. 2007).

DiscoverOrg's obligations are precisely set forth in Section 5 of the EULA and DiscoverOrg satisfied each.  First, DiscoverOrg granted Photon access to its Licensed Materials, as required under EULA Section 5.1. (Def. 56.1 ¶¶ 22–24).  Photon admits that it accessed and downloaded Licensed Materials from DiscoverOrg. (Def. 56.1 ¶¶ 23–24; SAC ¶ 13; Warshavsky Decl. Exh. 29).  Second, DiscoverOrg also provided support to assist Photon in accessing the Licensed Materials as obligated under Section 5.3.  When Photon was having access issues DiscoverOrg provided support and made personnel available to help resolve the problems Photon was encountering.  (Def. 56.1 ¶ 35; Smith Decl. Exhs. 9-10).  Third, DiscoverOrg met the quality guarantee under Section 5.2 of the EULA.  (Def. 56.1 ¶¶ 25–26).

Only Section 5.2 seems to be challenged by Photon here.  Under Section 5.2, if Photon provided notice to DiscoverOrg that more than 5% of the Licensed Materials Contacts were no longer employed by their listed companies, DiscoverOrg would have 30 days to correct the Licensed Materials in order to achieve 95% accuracy.  (Def. 56.1 ¶ 25; Smith Decl. Exh. 1). During the EULA's term, Photon never notified DiscoverOrg of any issue regarding the accuracy of its data.  (Def. 56.1 ¶ 26; Smith Decl. ¶ 5).  The accuracy of DiscoverOrg's data came up only after DiscoverOrg caught Photon using the Licensed Materials in violation of the EULA.  Even if Photon had raised concerns during the EULA's term, the data was always at least 95% accurate. Photon's own skewed analysis proves as much.  Photon looked at very small subsets of data to try to cross the 5% inaccuracy threshold. (Def. 56.1 ¶ 61; Warshavsky Decl. Exh. 22).  However, the highest percentage of inaccurate data it could find for any set was only 1.37%.  (*Id.*).  Photon has not produced any evidence to show that DiscoverOrg's data was ever less than 95% accurate.

DiscoverOrg satisfied each of its obligations under the EULA, proving the second element in its breach of contract counterclaim and defeating Photon's breach of contract claim as Photon cannot establish the DiscoverOrg breached the contract.

### C. THERE IS NO GENUINE DISPUTE THAT PHOTON BREACHED THE CONTRACT

*Breach of Section 7.2*

Photon's continued use of DiscoverOrg's data after the EULA expired was a clear breach of Section 7.2 of the EULA. Section 7.2 provides that "[u]pon expiration or termination of this Agreement, [Photon] agrees to destroy any and all copies of Licensed Materials and any information it has obtained from the Listened Materials, whether in hard copy or electronic form." (Def. 56.1 ¶ 38; Smith Decl. Exh. 1). Photon continued to use REDACTED after the EULA's termination until at least August 2020. (Def. 56.1 ¶ 46; Smith Decl. Exh. 15). Photon's continued REDACTED demonstrates that Photon did not destroy all copies of Licensed Materials as obligated under the EULA. Further, Photon provided no documents or other records showing the deletion of the Licensed Materials. (Def. 56.1 ¶ 39).

*Breach of Section 4.2*

Photon's use of DiscoverOrg's Licensed Materials past the EULA's expiration, and its provision of Licensed Materials to third-party Packyge violate its obligations under Section 4.2 of the EULA as well. Section 4.2 provides, in relevant part, that "[Photon] shall not redistribute, sublicense, transfer, sell, offer for sale, or disclose any of the Licensed Materials to any third parties…Upon expiration or termination of this agreement, Licensee shall cease accessing the Licensed Materials or using the Licensed Materials in any way." (Def. 56.1 ¶ 37; Smith Decl. Exh. 1). Photon's REDACTED breach Section 4.2 for the same aforementioned

reasons that it breached Section 7.2.  Photon further breached Section 4.2 by providing Licensed

Materials to third-party Packyge.  Packyge REDACTED

(Def. 56.1 ¶¶ 50–58; Smith Decl. ¶¶ 12-21; Exhs. 2-27).  REDACTED

from Packyge, as set

forth in the chart below:

REDACTED

REDACTED

.  (Def. 56.1 ¶¶ 50, 53–54; Smith Decl. ¶¶ 13, 17-18).  R
E
D
A
CT
E
D

to Packyge, a third party, was an

unauthorized use of the Licensed Materials under the terms of the EULA and a breach of Section 4.2.

### D. DISCOVERORG WAS DAMAGED BY PHOTON'S BREACH

Photon's continued use of DiscoverOrg's Licensed Materials over a period of three years since the termination of the EULA, without payment, and provision of DiscoverOrg's information to third-party Packyge, has damaged DiscoverOrg. To demonstrate the harm suffered, DiscoverOrg "need only show a stable foundation for a reasonable estimate of the damage incurred as a result of the breach." *Tractebel Energy Mktg. Inc. v. AEP Power Mktg. Inc.*, 487 F.3d 89, 110–11 (2d Cir. 2007). If there is some uncertainty surrounding the damages calculation, the burden rests on the wrongdoer. *Washington v. Kellwood Co.*, No. 05 Civ. 10034 (MHD), 2015 WL 6437456, at *12 (S.D.N.Y. Oct. 14, 2015). As a result of Photon's unauthorized use of the Licensed Materials during each for three years after the anniversary of the EULA's expiration (May 2018-May 2019, May 2019-May 2020, May 2020 to present), DiscoverOrg has lost subscription fees, and Photon's unpaid use has diluted the value of DiscoverOrg's database. Photon's provision of the Licensed Materials to Packyge, which did not pay a subscription fee, has further damaged DiscoverOrg.

A reasonable estimate for the damage caused by Photon can be calculated using the list price for a subscription and multiplying it by the number of years Photon used it after the EULA's expiration. This amount was listed in the EULA. The list price for a REDACTED (Def. 56.1 ¶ 17; Smith Decl. Exh. 1 P 1). Therefore, DiscoverOrg is owed, at a minimum, REDACTED for Photon's use. In addition, DiscoverOrg should recover REDACTED for Packyge's use, which occurred from January 2018 to mid-March 2018.

DiscoverOrg additionally is entitled to recover its attorney's fees. Section 13.1 of the EULA provides in stating that "[i]n the event of any dispute arising under this agreement, the prevailing party shall be entitled to recover its reasonable costs and expenses actually incurred in endeavoring to enforce the terms of this Agreement, including reasonable attorneys fees." (Smith Decl. Exh. 1).

## II.  POINT TWO: PHOTON WAS UNJUSTLY ENRICHED BY ITS UNAUTHORIZED USE OF DISCOVERORG'S DATA

DiscoverOrg's unjust enrichment claim is solely brought in the alternative and only in the event that the Court determines the EULA is invalid or unenforceable—which it should not— or otherwise does not cover Photon's use of DiscoverOrg's Licensed Materials—which it does. This claim would rise and fall on the same facts and circumstances: Photon's use of DiscoverOrg's data—the Licensed Materials—to enrich itself to the detriment of paying a license fee to DiscoverOrg.

"To prevail on a claim for unjust enrichment in New York, a plaintiff must establish (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc.*, 448 F.3d 573, 586 (2d Cir. 2006) (internal quotations and citations omitted). All three of these elements are satisfied here.

*First*, Photon benefited from the use of DiscoverOrg's Licensed Materials because it used this commercially valuable data to reach out to businesspeople and companies for sales, marketing, recruiting and business development, without paying. Photon did not have to spend the time, money, and resources locating or verifying contact information, but rather used the information that DiscoverOrg had tirelessly cultivated. Photon even provided this information to a third party, Packyge. And by virtue of the EULA, and its discussions with DiscoverOrg,

Photon knew that the Licensed Materials were commercially valuable data that belonged to DiscoverOrg and that DiscoverOrg expected to be paid for the use of its data.

*Second*, Photon's use of DiscoverOrg's Licensed Materials was at DiscoverOrg's direct expense. DiscoverOrg's list price for this subscription was <span style="color:red">REDACTED</span> Instead of receiving a subscription fee each year Photon used DiscoverOrg's proprietary information, it got nothing.

*Third*, equity and good conscience require restitution. A party should not be permitted to retain and use data that does not belong to it without paying an appropriate licensing fee. Photon has improperly retained and used DiscoverOrg's data and retained the benefit of not having to recreate the materials itself or pay for their use. Photon should not be rewarded for its unauthorized actions.

## III. POINT THREE: PHOTON'S BREACH OF CONTRACT CLAIM MUST BE DISMISSED

Photon's breach of contract claim fails because DiscoverOrg has satisfied its obligations under the EULA. Photon argues that DiscoverOrg breached the EULA because DiscoverOrg's data was "not genuine." (SAC ¶ 22). The only contract term identified by Photon is Section 5.2 of the EULA, which requires that DiscoverOrg's data be at least 95% accurate. But Photon cannot show that DiscoverOrg failed to meet this 95% standard and that it is in breach of the EULA.

Photon downloaded over 45 million records from DiscoverOrg, of which, over 25 million records were downloaded during the last two weeks of the EULA. (Def. 56.1 ¶¶ 24–32; Smith Decl. Exhs. 13 and 14; Warshavsky Decl. Exh. 29). Photon claims to have received <span style="color:red">REDACTED</span> from DiscoverOrg. (Def. 56.1 ¶ 62; Warshavsky Decl. Exhs. 20). However, upon a simple examination of those <span style="color:red">REDACTED</span>

REDACTED          (Def. 56.1 ¶ 63; Warshavsky Decl. Exh. 21).  Based on this, the

percentage of accurate data is just under 100% (537 records out of 45,000,000 is under

0.0014%).  Even Photon's own internal emails from September 2018, when it tried to show that

DiscoverOrg's data was less than 95% accurate, reveal that Photon could not manufacture a

scenario where even smaller data sets were less than 98% accurate.  (Def. 56.1 ¶ 61; Warshavsky

Decl. Exh. 22).  And it was likely these contrivances that clearly led to Photon's double counting

here.  Furthermore, Photon's own interrogatory responses--which propagate Photon's double

counting and concocted [4,800] download number--state that DiscoverOrg's inaccuracies

represent only approximately 0.39% (1,009 records out of 259,480 downloaded) of the total data

downloaded.  (Def. 56.1 ¶ 62; Warshavsky Exh. 20 at P 4-5 (Responses to Interrogatories 8 and

10)).  Photon's inability to show that DiscoverOrg's data was less than 95% accurate explains

why Photon never notified DiscoverOrg of this fact as was required under Section 5.2 the EULA.

　　　In addition to the fact that DiscoverOrg's data meets and exceeds the 95% accuracy

threshold, Photon also cannot show that it suffered any harm.  *First*, Photon only received the

REDACTED

                         (Def. 56.1 ¶ 7; Smith Decl. ¶ 7).  *Second*, REDACTED


(Def. 56.1 ¶ 9; Smith Decl. ¶ 8).  That means that Photon received all of the data it thought it was

receiving—it was merely receiving REDACTED

　　　Based on these undisputed facts, Photon cannot show that DiscoverOrg failed to meet the

95% accuracy threshold.  Nor can Photon claim that DiscoverOrg breach the EULA especially

when it never once notified DiscoverOrg of any claimed failure to meet the threshold accuracy

requirement of Section 5.2.

Photon's breach of contract claim should be dismissed.

## CONCLUSION

DiscoverOrg is entitled to summary judgment on its counterclaim as to Photon's breach of contract, or in the alternative its counterclaim for unjust enrichment, and Photon's breach of contract claim against DiscoverOrg. DiscoverOrg and Photon entered into a valid contract, which Photon breached by using the Licensed Materials for over three years past the termination of the EULA without paying DiscoverOrg anything. Photon must pay for its use. DiscoverOrg respectfully asks the Court to enter judgment in its favor.

Dated: New York, New York
      September 25, 2020

Respectfully Submitted,

*/s/ Oren J. Warshavsky*
BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
Oren J. Warshavsky, Esq.
Email: owarshavsky@bakerlaw.com
Carrie A. Longstaff, Esq.
Email: clongstaff@bakerlaw.com
Megan A. Corrigan, Esq.
Email: mcorrigan@bakerlaw.com

*Attorneys for Defendant DiscoverOrg LLC*