UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
:
NORTH AMERICA PHOTON INFOTECH LTD.,               :
:
              Plaintiff,                :
:    20 Civ. 2180 (JPC)
       -v-                                      :
:    OPINION
ZOOMINFO LLC,                                     :    AND ORDER
:
              Defendant.                :
:
-------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

    Defendant ZoomInfo LLC, formerly known as DiscoverOrg LLC, contracted to provide marketing data to Plaintiff North American Photon Infotech Ltd. ("Photon").[1] Both parties allege breaches of that contract. Photon accuses ZoomInfo of providing inaccurate data, while ZoomInfo, in a counterclaim, alleges that Photon used ZoomInfo's data after the contract ended and improperly shared that data with a third party. The parties now move for summary judgment. For reasons that follow, the Court grants ZoomInfo summary judgment to dismiss Photon's claim and to establish liability as to its own claim but denies ZoomInfo summary judgment on damages based on the current record. The Court also denies Photon's motion for summary judgment in its entirety.

---

[1] Defendant's name changed from DiscoverOrg to ZoomInfo midway through this litigation. The Court previously entered a stipulation and order to amend the caption to reflect the company's current name. Dkt. 86. The Court therefore refers to Defendant as "ZoomInfo" throughout this Opinion and Order for ease of reference.

## I. Background

### A. Facts[2]

ZoomInfo sells a subscription service that provides clients with business data for use in marketing. Def. 56.1 Stmt. ¶ 1. This data includes profiles, contact information, organizational charts, and similar information on businesses. *Id.* ¶ 2. Subscribers can view the data through an online interface or they can export and download the data for local use. *Id.*

On May 11, 2017, Photon and ZoomInfo entered into an End User License Agreement ("EULA"), which granted Photon access to ZoomInfo's database and service, at a discounted fee, for a period of twelve months. *Id.* ¶¶ 15-16, 19-22; *see* Dkt. 77, Exh. 2 ("EULA") § 5.1 ("[ZoomInfo] will provide [Photon] with access to [ZoomInfo's] Licensed Materials."). Photon purchased access to ZoomInfo's database for sales, marketing, recruitment, and business development purposes. Def. 56.1 Stmt. ¶ 16. During the term of the EULA, Photon accessed ZoomInfo's database and downloaded records from that database. *Id.* ¶¶ 23-24.[3]



To monitor its data and safeguard against theft, ZoomInfo ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id.* ¶ 5. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* ¶¶ 6, 7, 9. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id.* ¶ 6. ▮▮▮▮▮

---

[2] These facts are drawn from the parties' statements of material facts pursuant to Local Civil Rule 56.1. *See* Dkt. 72 ("Def. 56.1 Stmt."); Dkt. 79 ("Pl. 56.1 Stmt."); Dkt. 92 ("Def. Counter 56.1 Stmt."); Dkt. 101 at 15-17 ("Pl. Counter 56.1 Stmt."). Unless otherwise noted, the Court cites to only one party's statement where the parties do not dispute the fact, the adverse party has offered no admissible evidence to refute that fact, or the adverse party simply seeks to add its own "spin" on the fact or otherwise dispute the inferences from the stated fact.

[3] While not relevant to the disposition of the parties' motions, the parties dispute the number of records ZoomInfo downloaded during the term of the EULA. *See* Pl. Counter 56.1 Stmt. ¶ 24.



███████████████████████████████████████████████████████████████. *Id.* ¶¶ 9, 13. █████

███████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████ *Id.* ¶ 10. █████

███████████████████████████████████████████ *See id.* ¶ 11.

The EULA required ZoomInfo to provide data that was at least ninety-five percent accurate and afforded ZoomInfo a thirty-day widow, following a notice of deficiency from Photon, to reduce the inaccuracy rate to at or below five percent. *Id.* ¶ 25. If inaccuracies exceeded five percent and ZoomInfo failed to cure after notice, Photon could terminate the EULA and receive a pro-rated refund. *Id.*[4] Photon never complained about the accuracy of ZoomInfo's data during the contract term. *Id.* ¶ 26. At the heart of Photon's breach of contract claim, however, is its allegation that ZoomInfo's ███████ were "false data" and that ZoomInfo failed to provide data that met the ninety-five percent accuracy threshold. Dkt. 49 ("Second Am. Compl.") ¶ 22; Pl. 56.1 Stmt. ¶¶ 9-13.[5]

---

[4] Section 5.2 of the EULA provided:

> If more than 5% of the Licensed Materials Contacts are no longer employed by their listed companies, upon notice from [Photon], [ZoomInfo] shall have 30 days to correct the Licensed Material in order to make it at least 95% accurate. If [ZoomInfo] is unable to achieve 95% accuracy within 30 days, upon [Photon]'s request, [Photon] may terminate the Agreement and shall be entitled to a pro-rated refund of any pre-paid fees as of the date of the original notice.

ELUA § 5.2.

[5] While Photon previously claimed that the ████████████████████████, Pl. 56.1 Stmt. ¶ 13, it now acknowledges that the ████████████████████████████████████████████ Pl. Counter 56.1 Stmt. ¶ 9.

3

Photon was authorized under the EULA to download ZoomInfo's data until April 11, 2018, which was thirty days prior to the expiration of the contract. Def. 56.1 Stmt. ¶ 28. As the parties negotiated a possible renewal of the contract, ZoomInfo extended Photon's access to the database until May 16, 2018 and Photon's download privileges until early May 2018. Id. ¶ 29. Photon ultimately declined to renew the contract. Id. ¶ 36. The EULA required, upon its termination or expiration, that Photon cease using or accessing ZoomInfo's data and destroy any copies of ZoomInfo's data, whether in hard copy or electronic form. Id. ¶¶ 37-38.[6]

After the contract expired, however, Photon continued to access and use ZoomInfo's data, including by sending emails to certain ▮▮▮▮▮▮▮▮▮▮. Id. ¶¶ 40-42, 45.[7] On August 20, 2018, ZoomInfo notified Photon that Photon was improperly using ZoomInfo's data, id. ¶ 40, and later showed Photon as proof two ▮▮▮▮▮▮ that Photo sent after the expiration of the EULA, id. ¶ 41. While Photon stopped sending emails to those particular addresses, it continued emailing other ▮▮▮▮▮▮. Id. ¶ 42. This continued until at least August 13, 2020. Id. ¶ 46; see id. ¶ 47 ("Since June 1, 2020, Photon has continued to send emails to two [ZoomInfo] ▮▮▮▮▮▮."). While Photon admits to continuing to use ZoomInfo's service after the

---

[6] These obligations are found in two provisions of the EULA. Section 4.2 required that "[u]pon expiration or termination of this Agreement, [Photon] shall cease accessing the Licensed Materials or using the Licensed Materials in any way . . . [and] shall ensure that no Authorized User takes any action inconsistent with [Photon]'s obligations under this Agreement." EULA § 4.2. Section 7.2 provided that "[u]pon expiration or termination of this Agreement, [Photon] agrees to destroy any and all copies of Licensed Materials and any information it has obtained from the Licensed Materials, whether in hard copy or electronic form." EULA § 7.2.

[7] The parties dispute the amount of data that Photon continued to access after the EULA expired. ZoomInfo claims that Photon "consumed" more than 42 million records after the contract's termination, Def. 56.1 Stmt. ¶ 43; see Pl. Counter 56.1 Stmt. ¶ 44, while Photon maintains that it downloaded only 259,480 records over the course of the contract, Def. 56.1 Stmt. ¶ 62.

EULA expired, *id.* ¶ 45, Photon claims, disputedly, that it undertook "good faith efforts" to remove and stop using ZoomInfo's data, Pl. 56.1 Stmt. ¶ 19.

ZoomInfo also contends that Photon violated the EULA's prohibition on disclosing data from ZoomInfo to third parties. *See id.* ¶ 49.[8] From January 2018 through March 2018, someone named Mark Thompson with an email address affiliated with a third-party company called Packyge sent multiple promotional emails to ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. *Id.* ¶¶ 50, 52-58. And on another occasion, someone named John Thompson, also supposedly with Packyge, did the same. *Id.* ¶¶ 50-51, 58.

Photon calculates that it downloaded 259,480 records in connection with the EULA, and its investigation revealed that of those records, ▇▇▇▇▇▇▇▇▇▇▇. *Id.* ¶ 62. That amounts to 0.39%. Pl. 56.1 Stmt. ¶ 17. Photon's analyses of subsets of data it received from ZoomInfo found none with inaccuracy rates above 1.37%. Def. 56.1 Stmt. ¶ 61. ZoomInfo also challenges Photon's numbers, asserting that Photon failed to remove ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. Def. Counter 56.1 Stmt. ¶ 13. Photon claims, disputedly, that the inclusion of the ▇▇▇▇▇▇ caused significant harm to its marketing campaigns. Pl. 56.1 Stmt. ¶¶ 15-16.

**B. Procedural History**

On January 1, 2019, Photon sued ZoomInfo in the Superior Court of California, San Francisco County. Dkt. 1, Exh. B. ZoomInfo then removed the case to the U.S. District Court for the Northern District of California. Dkt. 1. On March 9, 2020, after jurisdictional discovery, the

---

[8] Under section 4.2 of the EULA, Photon "shall not permit anyone who is not an Authorized User to use any username or password or otherwise access or use the Licensed Materials. [Photon] shall not redistribute, sublicense, transfer, sell, offer for sale, or disclose any of the Licensed Materials to any third party." EULA § 4.2.

case was transferred to the U.S. District Court for the Southern District of New York, Dkt. 39, and assigned to the Honorable Jed S. Rakoff.

On April 7, 2020, Photon filed the Second Amended Complaint. On June 8, 2020, Judge Rakoff dismissed all of Photon's claims except for its breach of contract claim. Dkt. 60. That remaining claim alleges that ZoomInfo breached the EULA by failing to meet its accuracy threshold and by knowingly providing false data, *i.e.*, ▮▮▮▮▮▮▮▮. Second Am. Compl. ¶¶ 19-23. On June 22, 2020, ZoomInfo filed an answer, Dkt. 61 at 1-5, and brought amended counterclaims, Dkt. 61 at 5-16 ("Counterclaims"). ZoomInfo's counterclaims allege that Photon breached the EULA by continuing to use ZoomInfo's data after the contract expired, Counterclaims ¶¶ 43-48, and, in the alternative, that Photon was unjustly enriched by this conduct, *id.* ¶¶ 49-54.

Both parties moved for summary judgment on all remaining claims on September 18, 2020. Dkts. 63, 64, 76 ("Photon Motion"), 80 ("ZoomInfo Motion"). On September 29, 2020, the case was reassigned to the undersigned.

## II. Discussion

### A. Legal Standards

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute exists where 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party,' while a fact is material if it 'might affect the outcome of the suit under the governing law.'" *Chen v. 2425 Broadway Chao Rest., LLC*, No. 16 Civ. 5735 (GHW), 2019 WL 1244291, at *4 (S.D.N.Y. Mar. 18, 2019) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The Court must "resolve all ambiguities and draw all justifiable factual

6

inferences in favor of the party against whom summary judgment is sought." *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008). "The movant bears the initial burden of demonstrating 'the absence of a genuine issue of material fact,' and if satisfied, the burden then shifts to the non-movant to present 'evidence sufficient to satisfy every element of the claim.'" *Chen*, 2019 WL 1244291, at *4 (quoting *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008)).

"To defeat a motion for summary judgment, the non-movant 'must come forward with "specific facts showing that there is a genuine issue for trial."'" *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The non-movant "may not rely on conclusory allegations or unsubstantiated speculation," and "must offer some hard evidence showing that its version of the events is not wholly fanciful." *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (citations omitted). "The mere existence of a scintilla of evidence in support of the [non-movant]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252. "Where no rational finder of fact could find in favor of the nonmoving party because the evidence to support its case is so slight, summary judgment must be granted." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (internal quotation marks and citation omitted).

The EULA "shall be construed in accordance with . . . the laws of the State of New York." EULA § 12. The elements of a breach of contract claim in New York are "(1) the existence of an agreement; (2) adequate performance of the contract by the plaintiff; (3) breach of contract by the defendant; and (4) damages." *Swan Media Grp. v. Staub*, 841 F. Supp. 2d 804, 807 (S.D.N.Y. 2012) (citing *Eternity Global Master Fund v. Morgan Guar. Tr. Co.*, 375 F.3d 168, 177 (2d Cir. 2004)).

"Under New York law, the initial interpretation of a contract 'is a matter of law for the court to decide.'" *K. Bell & Assocs. v. Lloyd's Underwriters*, 97 F.3d 632, 637 (2d Cir. 1996) (quoting *Readco, Inc. v. Marine Midland Bank*, 81 F.3d 295, 299 (2d Cir. 1996)). A court must first determine if a contractual provision is ambiguous. *Hugo Boss Fashions, Inc. v. Fed. Ins. Co.*, 252 F.3d 608, 616 (2d Cir. 2001). "No ambiguity exists . . . when contract language has 'a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion.'" *Planète Bleue Télévision, Inc. v. A&E Television Networks, LLC*, No. 16 Civ. 9317 (PGG), 2018 WL 10579873, at *8 (S.D.N.Y. Sept. 19, 2018) (alteration in original) (quoting *Breed v. Ins. Co. of N. Am.*, 46 N.Y.2d 351, 355 (1978)).

"Construing an unambiguous contract provision is a function of the court, rather than a jury, and matters extrinsic to the agreement may not be considered when the intent of the parties can fairly be gleaned from the face of the instrument." *Terwilliger v. Terwilliger*, 206 F.3d 240, 245 (2d Cir. 2000) (citing *Teitelbaum Holdings, Ltd. v. Gold*, 48 N.Y.2d 51, 56 (1979)). When interpreting a contract, a court must consider "the provisions of the contract as a whole," and cannot "view sentences or clauses in isolation." *Int'l Klafter Co. v. Cont'l Cas. Co.*, 869 F.2d 96, 99 (2d Cir. 1989). "[T]he entire contract must be considered, and all parts of it reconciled, if possible, in order to avoid an inconsistency," *Terwilliger*, 206 F.3d at 245, and to avoid "adopting an interpretation that would render any individual provision superfluous,'" *L. Debenture Tr. Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 468 (2d Cir. 2010) (quoting *Int'l Multifoods Corp. v. Commercial Union Ins. Co.*, 309 F.3d 76, 86 (2d Cir. 2002)).

8

B.  **Photon's Breach of Contract Claim**

The Court begins with the parties' motions for summary judgment on Photon's breach of contact claim.  Photon argues that ZoomInfo breached the EULA by failing to provide ninety-five percent accurate data and by knowingly providing false data, namely, ▇▇▇▇▇▇▇▇.  Second Am. Compl. ¶¶ 19-23.  Photon points to the EULA's requirement that ZoomInfo "provide [Photon] with access to [ZoomInfo]'s Licensed Materials," EULA § 5.1, and its definition of "Licensed Materials" as "consist[ing] of all electronic information as described in any Ordering Document executed between the parties."  *Id.* at § 1.2.  Reasoning that the EULA's definition of "Licensed Materials" did not mention ▇▇▇▇▇▇▇, Photon argues that section 5.1 required ZoomInfo to provide "solely the Licensed Materials under the Ordering Document," not other materials such as ▇▇▇▇▇▇▇.  Photon Motion at 10-11.  Photon continues: "if Photon had known that [ZoomInfo] would provide data that it knew was fake, it would have never entered into any agreement with [ZoomInfo]."  *Id.* at 11.

Photon's argument fails for two reasons.  First, nothing in section 5.1 required Photon to provide *only* the Licensed Materials.  Section 5.1 required ZoomInfo to "provide [Photon] with access to [ZoomInfo]'s Licensed Materials for the products and/or services specified in the Ordering Document."  EULA § 5.1.  Photon does not allege that ZoomInfo failed to do so.  Rather, Photon claims that ZoomInfo wrongfully provided the Licensed Materials *plus* ▇▇▇▇▇▇▇  But this did not violate the EULA.  The EULA contained no requirement that prohibited the inclusion of ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, and the Court will not create an obligation absent from the contract.  *See L. Debenture Tr. Co. of N.Y.*, 595 F.3d at 468 ("[C]ourts may not by construction add or excise terms, nor distort the meaning of those used and thereby

9

make a new contract for the parties under the guise of interpreting the writing." (quoting *Bailey v. Fish & Neave*, 868 N.E.2d 956, 959 (N.Y. 2007))).

Second, in arguing that the provision of "fake data" alone violated the EULA, Photon leans heavily on section 5.1, but largely ignores the accuracy language in the section that immediately follows. Photon was allowed to terminate the contract if, after notice and a thirty-day opportunity to cure, the Licensed Materials were composed "more than 5% of . . . Licensed Materials Contacts [who] are no longer employed by their listed companies." EULA § 5.2; *see id.* § 4.2 (defining Licensed Materials Contacts as "person[s] identified in the Licensed Materials"). While section 5.1 created a general obligation for ZoomInfo to produce the relevant data to Photon, section 5.2 specifically addressed the consequences of inaccuracies in that data. If section 5.1 permitted Photon to sue based only on ZoomInfo's provision of any amount of inaccurate information, as Photon seems to contend, section 5.2's ninety-five percent accuracy threshold and notice and cure requirements would be largely superfluous. *See Muzak Corp. v. Hotel Taft Corp.*, 133 N.E.2d 688, 690 (N.Y. 1956) ("The rules of construction of contracts require us to adopt an interpretation which gives meaning to every provision of a contract or, in the negative, no provision of a contract should be left without force and effect.").

Moreover, Photon no longer appears to argue that ZoomInfo violated section 5.2 and concedes that the ▮▮▮▮▮▮▮▮ did not make up more than five percent of the Licensed Materials. Def. 56.1 Stmt. ¶ 62. Further, Photon never complained about the accuracy of ZoomInfo's data during the pendency of the contract. *Id.* ¶ 26. Nor has Photon pointed to any other inaccurate data supplied by ZoomInfo, let alone any that constituted at least five percent of the data set.

Photon argues in the alternative that ZoomInfo breached the implied covenant of good faith and fair dealing by "defeat[ing] the purpose of the contract" when it ▮▮▮▮▮▮▮▮

███████.  Photon Motion at 11-12.  Implied in all contracts under New York law, *see Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*, 487 F.3d 89, 98 (2d Cir. 2007), the covenant prohibits a party to a contract from "do[ing] anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract," *Dalton v. Educ. Testing Serv.*, 87 N.Y.2d 384, 389 (1995) (quoting *Kirke La Shelle Co. v. Paul Armstrong Co.*, 263 N.Y. 79, 87 (1933)).  A breach of this implied covenant is "merely a breach of the underlying contract." *Fasolino Foods Co. v. Banca Nazionale del Lavoro*, 961 F.2d 1052, 1056 (2d Cir. 1992) (internal quotation marks and citation omitted).  To prevail, "[a] plaintiff must show substantially more than evidence that the defendant's actions were negligent or inept," "such as that the defendant 'act[ed] arbitrarily or irrationally in exercising the discretion' afforded to it under the contract." *Sec. Plans, Inc. v. CUNA Mut. Ins. Soc.*, 769 F.3d 807, 817-18 (2d Cir. 2014) (citations omitted).  Parties may "'act on [their] own interests in a way that may incidentally lessen' the other party's anticipated fruits." *M/A-COM Sec. Corp. v. Galesi*, 904 F.2d 134, 136 (2d Cir. 1990) (quoting *Van Valkenburgh, Nooger & Neville, Inc. v. Hayden Publ'g Co.*, 281 N.E.2d 142, 145 (N.Y. 1972)).  If a party "ha[s] a genuine and colorable business justification for its decision, then its actions . . . will not have violated the implied covenant." *Sec. Plans, Inc.*, 769 F.3d at 820.

In this case, Photon has not alleged that ZoomInfo had any motivation for including the ███████ besides enforcing the EULA's own termination and nondisclosure provisions, a patently legitimate business purpose.  ZoomInfo ███████ safeguard the security of its materials and guard against theft, *see* Deft. 56.1 Stmt. ¶ 5, a strategy that proved wise here when communications with ███████ alerted ZoomInfo to Photon's violation of the EULA, *id.* ¶ 41.  The undisputed record also reflects that ZoomInfo wished to continue doing business with Photon, as ZoomInfo spent months trying to negotiate an extension

of the EULA.  *See* Def. 56.1 Stmt. ¶¶ 27, 29-30.  Such efforts by ZoomInfo to continue to do business with Photon by extending their contractual relationship would be inconsistent with a desire to injure Photon's rights under the contract.  Photon therefore has not presented any evidence to support a claim for breach of the covenant.  *See Sec. Plans, Inc.*, 769 F.3d at 818 (affirming summary judgment when "the record contain[ed] nothing to suggest . . . more than negligence"); *Vista Outdoor Inc. v. Reeves Family Tr.*, 234 F. Supp. 3d 558, 570 (S.D.N.Y. 2017) (granting summary judgment when the party "had a legitimate business rationale" for the allegedly wrongful action).

Thus, the undisputed record makes plain that ZoomInfo did not violate the EULA by ████████████████████████████████, especially with those records making up far less than five percent of the exported data.  In the absence of a genuine dispute of material fact, ZoomInfo is entitled to summary judgment on Photon's breach of contract claim, and Photon's motion on that claim is denied.

### C. ZoomInfo's Breach of Contract and Unjust Enrichment Counterclaims

ZoomInfo brings two counterclaims.  First, ZoomInfo alleges that Photon breached the EULA by continuing to use ZoomInfo's information and failing to destroy it after the contract's termination.  Counterclaims ¶¶ 43-48.  Second, in the alternative, ZoomInfo claims that Photon's use of the information constituted unjust enrichment.  *Id.* ¶¶ 49-54.

No dispute of material fact impedes ZoomInfo's entitlement to summary judgment on liability with respect to its breach of contract claim.  As to the first element, the parties agree that the EULA was a valid contract between Photon and ZoomInfo.  *See, e.g.*, Pl. Counter 56.1 Stmt. ¶ 15; Second Am. Compl. ¶¶ 11, 20.  Second, ZoomInfo performed under that contract.  As discussed above, ZoomInfo provided Photon with access to its relevant data, as required by section

5.1 of the EULA, and Photon has not offered any evidence to suggest otherwise. *See* Def. 56.1 Stmt. ¶ 19. Photon also does not argue that ZoomInfo failed to provide support during the term of the contract, as required by section 5.3 of the EULA. Rather, ZoomInfo has presented evidence that it provided support and made personnel available when Photon encountered technical issues with accessing the data. *See* Dkt. 67, Exhs. 9-10.

As to the third element, the undisputed evidence establishes Photon's breach of the EULA's clear terms. As Photon acknowledges, the EULA required Photon to cease using and to destroy ZoomInfo's data upon the termination of the contract, Pl. Counter 56.1 Stmt. ¶¶ 37-38; EULA § 7.2, yet Photon's use of ZoomInfo's data "extended beyond the EULA," Pl. Counter 56.1 Stmt. ¶¶ 45-47. Photon insists that it took "commercially reasonable efforts" to remove the data, and that its software systems impeded removal efforts, *see* Dkt. 99 ("Photon Opposition") at 10-11, but the EULA plainly required complete removal, *see* Pl. Counter 56.1 Stmt. ¶¶ 37-38. Moreover, while Photon cites "commercially reasonable efforts" language in the EULA, Photon Opposition at 10, that provision did not concern Photon's obligation to cease using ZoomInfo's data. Rather, the cited provision, contained in section 6.4, addressed "commercially reasonable efforts to prevent unauthorized access to or use of the Licensed Materials." EULA § 6.4. If anything, the reference to "commercially reasonable efforts" in section 6.4 suggests that the omission of such language in section 7.2 means that Photon enjoyed no flexibility in its obligation to cease using and to destroy ZoomInfo's data. *See Sterling Investor Servs. v. 1155 Nobo Assocs.*, 818 N.Y.S.2d 513, 516 (App. Div. 2006) ("Under accepted canons of contract construction, where certain language is omitted from a provision but placed in other provisions, it must be assumed that the omission was intentional." (citing *U.S. Fid. & Guar. Co. v. Annunziata*, 492 N.E.2d 1206, 1208 (N.Y. 1986))).

ZoomInfo similarly has demonstrated that there is no material dispute that Photon violated the EULA by providing its information to a third party, Packyge. Photon agrees that the EULA prohibited distribution of the materials it received from ZoomInfo to third parties, *see* Pl. Counter 56.1 ¶ 49, and that a third party, Packyge, had access to the ███████████████████████ ███████████████████████████████████, *see id.* ¶¶ 50-58. Photon provides no evidence or argument to refute the obvious conclusion that Photon gave Packyge access to ZoomInfo's data. *See* Photon Opposition at 14. Rather, Photon only argues that Packyge's receipt of that information should not entitle ZoomInfo to damages. *See id.* ("[T]here is no basis for any finding that Packyge would ever have made any purchase from ZoomInfo."). ZoomInfo is therefore entitled to summary judgment on liability on its breach of contract claim.[9]

The Court next turns to ZoomInfo's request for damages. The EULA limited liability by precluding "indirect, consequential, special, or lost profits damages" "except for in instances of gross negligence or willful misconduct." EULA § 16 (capitalization removed). ZoomInfo seeks to recover the fees it claims it would have charged for its service had Photon renewed and for Packyge's use of its data. *See* ZoomInfo Motion at 17.

As such, ZoomInfo essentially seeks lost asset damages. "[W]here the breach involves the deprivation of an item with a determinable market value, the market value at the time of the breach is the measure of damages." *Sharma v. Skaarup Ship Mgmt.*, 916 F.2d 820, 825 (2d Cir. 1990); *see also Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 196 (2d Cir. 2003) (explaining that when a party breached a contract by failing to deliver warrants to buy stock, the proper measure

---

[9] Because ZoomInfo pleads unjust enrichment only in the alternative, the Court does not reach that cause of action and dismisses it without prejudice. *See* ZoomInfo Motion at 18 ("[ZoomInfo]'s unjust enrichment claim is solely brought in the alternative and only in the event that the Court determines the EULA is invalid or unenforceable . . . or otherwise does not cover Photon's use of [ZoomInfo]'s Licensed Materials.").

14

of damages was the market value of the warrants at the time of breach).  While this form of damages takes "future profits into account" indirectly, as asset prices reflect the income streams that can be generated with them, it is not the same as lost profits.  *Sharma*, 916 F.2d at 826.  Such damages, applied in this case, would resemble those available in the context of trade secret misappropriation.  *See, e.g., Myriad Dev. v. Alltech, Inc.*, 817 F. Supp. 2d 946, 970-75 (W.D. Tex. 2011) (explaining that a trade secret defendant can be made to pay the market license fee for the information that the defendant misappropriated).

Lost asset damages can be either general or consequential depending on the asset lost. When a plaintiff seeks "the market value" of "the very performance promised," the damages sought are "general."  *Schonfeld v. Hilliard*, 218 F.3d 164, 175 (2d Cir. 2000).  For example, if a party breached a contract to agree to a lease, lost asset damages for the value of the lease would be general because the lease would be the promised performance.  *See id.* at 176.  But if a party breached a contract and the breach incidentally led to the loss of a separate valuable supply agreement, the asset value of the supply agreement would be consequential damages.  *See id.*

Photon argues that awarding ZoomInfo the value of its licensing fees would be impermissible consequential damages, rather than general damages.  *See* Photon Opposition at 15-16.  It claims that ZoomInfo seeks fees under a collateral, hypothetical contract that Photon declined to enter, rather than the contract that the parties in fact entered into.  *See* Photon Opposition at 16 n.3.  But ZoomInfo does not seek lost profits under a *hypothetical* contract, but the market value of the data that Photon retained in breach of the parties' *consummated* contract. The "very performance [Photon] promised" and failed to deliver, *Shonfeld*, 218 F.3d at 176, was deleting and ceasing to use ZoomInfo's data, and ZoomInfo may collect the value Photon wrongfully deprived ZoomInfo of by failing to perform, *i.e.*, the market value of Photon's

continued use.  Analogously, under New York law, a landlord's general damages after a holdover tenant breaches a lease equal the fair market value of the tenant's continued occupancy.  *See Palumbo v. Donalds*, 754 N.Y.S.2d 856, 863-64 (Civ. Ct. 2003).

The same rationale extends to the damages associated with Photon's unauthorized sharing of ZoomInfo's data with Packyge.  Photon failed to fulfill its contractual obligations when it provided that data to a third party, Packyge.  ZoomInfo was thus deprived of its exclusive contractual right to distribute its data, and ZoomInfo can recover the market value of the right it lost as general damages.  *See Med. Coll. of Wis. v. Attachmate Corp.*, No. 15 Civ. 151, 2016 WL 697145, *16 (E.D. Wis. Feb. 19, 2016) (holding that the plaintiff could recover lost license fees as a "natural result of . . . breach" after a defendant allowed unauthorized use of the plaintiff's software).

The Court cannot grant summary judgment on damages at this point, however, because factual disputes remain that could affect the calculation of damages.  For instance, because ZoomInfo charged Photon by the term of the license, *see* Def. 56.1 Stmt. ¶¶ 16-17, how long Photon continued to use ZoomInfo's data is material.  Photon apparently concedes that it continued to send marketing emails with ZoomInfo's data through at least August 13, 2020, suggesting that Photon used ZoomInfo's data for multiple years following the EULA's expiration. *See* Pl. Counter 56.1 Stmt. ¶ 46.  But on the current record, it is not clear whether there is a dispute as to how long Photon continued to access the data after the expiration of the EULA.

Similarly, Photon notes that the damages sought by ZoomInfo contemplate the full list price for its service, rather than the negotiated discount that Photon actually paid.  *See* Photon Opposition at 17.  Photon concedes that this discount was a "Promotional Incentive" that was below the listed standard price of ZoomInfo's materials.  *See* Pl. Counter 56.1 Stmt. ¶ 18; *see also*

Dkt. 69, Exh. 1 at 2. But the record lacks information on whether ZoomInfo regularly offers large discounts to customers, how long promotional discounts continue to apply, and whether any customers pay the full list price. *See* Photon Opposition at 17. While ZoomInfo argues that there is no indication in the record that Photon would have continued to receive the discount, Dkt. 115 at 7, the only undisputed evidence on this issue is that, on September 13, 2018, ZoomInfo offered Photon renewal of the EULA "at the list price." Def. 56.1 Stmt. ¶ 43. But this could have been an initial offer in negotiations that, if successful, could have yielded a lower renewal fee. In sum, on the current record, the Court cannot determine the fair market value of ZoomInfo's data service, and thus cannot decide the damages ZoomInfo is owed for Photon's improper use and distribution of ZoomInfo's data. The narrow factual questions of ZoomInfo's pricing and the length of Photon's misuse therefore remain open for the parties to litigate.[10]

### III. Conclusion

For the foregoing reasons, the Court grants ZoomInfo summary judgment with respect to Photon's breach of contract claim and liability on its own breach of contract claim but denies ZoomInfo summary judgment with respect to damages given factual issues that remain to be resolved. The Court also denies Photon's motion for summary judgment in its entirety. The Court further dismisses without prejudice ZoomInfo's cause of action for unjust enrichment, pleaded in the alternative in Count Two of its Amended Counterclaims. The Clerk of Court is respectfully directed to close the motions pending at Docket Numbers 63 and 64.

This Opinion and Order shall initially be filed under seal. The parties shall have until September 29, 2021 to file any proposed redactions to this Opinion and Order, as well as a letter

---

[10] ZoomInfo also has sought its attorneys' fees. Counterclaims at 16; ZoomInfo Motion at 16. The Court will defer any determination of whether fees are appropriate, and if so in what amount, until a determination is made as to damages.

justifying why these redactions are justified under *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006). The parties shall submit a single set of proposed redactions but may explain any disagreements in their joint letter.

    SO ORDERED.

Dated: September 23, 2021
       New York, New York

                                        JOHN P. CRONAN
                               United States District Judge