UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                 :

NORTH AMERICA PHOTON INFOTECH LTD.,     :
                                 :

              Plaintiff,         :

                                 :

          -v-               :           20 Civ. 2180 (JPC)

                                 :

ZOOMINFO LLC,                     :          <u>OPINION AND ORDER</u>

                                 :

             Defendant.      :

                                 :
------------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

Defendant ZoomInfo LLC, having successfully defeated a breach-of-contract claim brought by Plaintiff North America Photon Infotech Ltd. ("Photon") and prevailing on a breach-of-contract counterclaim of its own, now moves for attorneys' fees and costs under Federal Rule of Civil Procedure 54. For the reasons that follow, the Court awards ZoomInfo $783,710.89 in attorneys' fees and costs.

## I. Background

This case was said to "suffer[] a lengthy procedural history"—back in June 2020. *N. Am. Photon Infotech, Ltd. v. DiscoverOrg, LLC ("Photon I")*, No. 20 Civ. 2180 (JSR), 2020 WL 3051059, at *4 n.3 (S.D.N.Y. June 8, 2020).[1] By now, the Court assumes deep familiarity with the case's background. *See N. Am. Photon Infotech, Ltd. v. ZoomInfo LLC ("Photon II")*, No. 20 Civ. 2180 (JPC), 2021 WL 4482208, at *1-3 (S.D.N.Y. Sept. 23, 2021); *N. Am. Photon Infotech, Ltd. v. ZoomInfo LLC ("Photon III")*, No. 20 Civ. 2180 (JPC), 2022 WL 4132941, at *1-2

---

[1] ZoomInfo had been known before as DiscoverOrg; it changed names midway through the litigation. *See* Dkt. 86. For ease of reference, the Defendant is called ZoomInfo throughout this Opinion and Order.

(S.D.N.Y. Aug. 9, 2022); *N. Am. Photon Infotech, Ltd. v. ZoomInfo LLC ("Photon IV")*, Nos. 22-1979, 22-2074, 2024 WL 4799843, at *1 (2d Cir. Nov. 15, 2024) (summary order).  For present purposes, the following details suffice.

ZoomInfo contracted to provide marketing data to Photon; Photon alleged that ZoomInfo breached that contract—referred to as the End User License Agreement ("EULA")—by giving Photon bad data, while ZoomInfo alleged that Photon breached the EULA by using ZoomInfo's data after the contract ended and improperly sharing that data with a third party.  *See Photon II*, 2021 WL 4482208, at *1.

On December 3, 2018, Photon sued ZoomInfo in the Superior Court of California, San Francisco County.  Dkt. 1, Exhs. A, B.  ZoomInfo then removed the case to the U.S. District Court for the Northern District of California.  Dkt. 1.  On March 9, 2020, after jurisdictional discovery, the case was transferred to this District, Dkts. 38, 39, and assigned to the Honorable Jed S. Rakoff.

On April 7, 2020, Photon filed the Second Amended Complaint, claiming fraud, unfair competition, and breach of contract.  Dkt. 49 ¶¶ 19-37.  Photon alleged that it was damaged by at least $47,920 for ZoomInfo's breach of contract and $150,000 for ZoomInfo's fraud.  *Id.* at 6.  On June 8, 2020, Judge Rakoff dismissed all of Photon's claims except for breach of contract.  Dkt. 60; *see Photon I*, 2020 WL 3051059, at *2-4.  On June 22, 2020, ZoomInfo filed an answer and brought amended counterclaims for breach of contract and, alternatively, unjust enrichment.  Dkt. 61.

The parties cross-moved for summary judgment on their respective claims on September 18, 2020.  Dkts. 63, 64.  On September 29, 2020, the case was reassigned to the undersigned.  At the parties' request, the remainder of summary judgment briefing was stayed pending settlement discussions before the Honorable Katharine H. Parker, Dkt. 108, which ultimately proved

unsuccessful, Dkt. 112.  The parties completed summary judgment briefing on March 12, 2021.

Dkts. 114, 116.  In the meantime, Photon had upped its estimate of damages from ZoomInfo's

alleged breach to between $130,000 and $2,060,000.  Dkt. 77, Exh. 3 at 16-20.

On September 23, 2021, this Court fully denied Photon's summary judgment motion and

granted ZoomInfo summary judgment to dismiss Photon's claim and to establish liability on its

breach-of-contract counterclaim.  *Photon II*, 2021 WL 4482208, at *1, *8.  (Given the holding that

Photon breached the EULA, the Court dismissed ZoomInfo's alternative unjust-enrichment claim

without prejudice.  *Id.* at *7 n.9.)  The Court, however, denied ZoomInfo summary judgment as to

damages "given factual issues that remain to be resolved."  *Id.* at *7-8.

After the Court's summary judgment decision, the parties once again discussed settlement,

this time through the Court-annexed Mediation Program, Dkts. 125-127, yet those discussions

once again proved unsuccessful, Dkt. 132.  The parties then consented to a bench trial on damages.

Dkt. 134.  Ahead of trial, the parties submitted direct testimony from their witnesses by affidavit,

pre-trial memoranda of law, and trial exhibits.  Dkts. 137, 139, 141, 145-147.  The parties also

filed opposed motions *in limine*, Dkts. 154, 157, 165, 169, on which the Court reserved ruling until

it issued its post-trial Findings of Fact and Conclusions of Law, Dkt. 168.

The Court held the bench trial on June 24, 2022.  *See Photon III*, 2022 WL 4132941, at *2.

After, the parties submitted memoranda on their proposed calculations of damages.  Dkts. 171,

174.  On August 9, 2022, the Court issued its Findings of Fact and Conclusions of Law.  *Photon*

*III*, 2022 WL 4132941, at *1.  The Court first partly granted ZoomInfo's motion *in limine*, entirely

excluding the testimony of one of Photon's witnesses because Photon had failed to disclose the

witness under Federal Rule of Civil Procedure 26.  *Id.* at *3-5.  The Court denied ZoomInfo's

request to preclude parts of another witness's testimony, *id.* at *6-7, and denied Photon's motion

3

to strike parts of ZoomInfo's witness's testimony as inadmissible hearsay, *id.* at *7. The Court agreed with Photon, however, to disregard the portion of ZoomInfo's pretrial memorandum of law addressing attorneys' fees, explaining that it would consider fees only after resolving damages. *Id.*

After "mak[ing] findings of fact solely on the issues relevant to th[e] calculation" of damages, the Court concluded that ZoomInfo was "entitled to $94,500 in damages." *Id.* at *7-9. That conclusion relied on "*pro rata* monthly rates based on an annual subscription rate," rather than "hold[ing] Photon liable for full-year subscriptions for each of the contract years in which it wrongfully retained or shared ZoomInfo's data." *Id.* at *10. The parties then cross-appealed, Dkts. 189, 196, and the Court "defer[red] ZoomInfo's application for attorney's fees until the resolution of the appeal and cross-appeal in this case," Dkt. 199.

At the Second Circuit, Photon appealed the Court's liability holdings that it, but not ZoomInfo, breached the EULA, while ZoomInfo cross-appealed the Court's determination of the amount of damages. *See Photon IV*, 2024 WL 4799843, at *1-4. The Second Circuit affirmed this Court's holdings on liability. *Id.* at *2-4. As for damages, however, the Second Circuit found that this Court "erred in calculating damages on a per-month basis instead of a per-year basis," concluding that "ZoomInfo is entitled to damages on annual terms, for the yearly periods in which Photon (and [the third party]) misused ZoomInfo's data in violation of the EULA." *Id.* at *5. So the Second Circuit vacated the judgment "solely as to the amount of damages" and remanded for further proceedings. *Id.* at *6.

On remand, the parties agreed to damages totaling $216,000.00, Dkt. 206, and on May 5, 2025, the Clerk of Court entered judgment in that amount, plus post-judgment interest under 28 U.S.C. § 1961, Dkt. 212. That award, however, was "not inclusive of attorney's fees." *Id.* The Court set a briefing schedule for the anticipated attorneys' fees motion. Dkt. 214. Consistent with

4

that briefing schedule, on June 9, 2025, ZoomInfo moved for $872,717.63 in attorneys' fees and costs. Dkts. 216, 218 ("Warshavsky Decl."), 219 ("Motion"). Photon filed its opposition on July 14, 2025. Dkts. 225 ("Opposition"), 226 ("Pappas Decl."). After the Second Circuit taxed Photon $4,370.40 for ZoomInfo's costs, Dkt. 228, ZoomInfo filed its reply on July 23, 2025, and correspondingly reduced its request to $868,347.23: $846,363.42 in attorneys' fees and $21,983.81 in costs. Dkts. 230 ("Reply"), 232 ("Warshavsky Reply Decl."). The parties moved to seal and redact some of their papers in connection with the motion, Dkts. 215, 224, 229, and ZoomInfo moved for oral argument on the motion, Dkt. 233.

## II. Attorneys' Fees and Costs Motion

### A. Legal Standard

The parties agreed in the EULA that, "[i]n the event of any dispute arising under this agreement, the prevailing party shall be entitled to recover its reasonable costs and expenses actually incurred in endeavoring to enforce the terms of this Agreement, including reasonable attorney fees." Warshavsky Decl., Exh. 1 ("EULA") § 13.1. The EULA "shall be construed in accordance with . . . the laws of the State of New York." *Id.* § 12. "Under New York law, when a contract provides that in the event of litigation the losing party will pay the attorney[s]' fees of the prevailing party, the court will order the losing party to pay whatever amounts have been expended by the prevailing party, so long as those amounts are not unreasonable." *KLS Diversified Master Fund, L.P. v. McDevitt*, 532 F. Supp. 3d 126, 139 (S.D.N.Y. 2021) (internal quotation marks omitted).

While "the fact that a paying client was willing to pay and in fact paid a certain amount to litigate a case is strong evidence that the fee was reasonable," *Adstra LLC v. Kinesso, LLC*, No. 24 Civ. 2639 (LJL), 2025 WL 1070034, at *6 (S.D.N.Y. Apr. 9, 2025), it is not dispositive, as a

5

party "should not be permitted to manipulate the actual damage incurred by burdening the [other party] with an exorbitant fee arrangement," *F.H. Krear & Co. v. Nineteen Named Trs.*, 810 F. 2d 1250, 1263 (2d Cir. 1987) (internal quotation marks omitted). "A variety of factors informs the court's determination of whether a requested amount of attorneys' fees is reasonable or unreasonable, including the difficulty of the questions involved; the skill required to handle the problem; the time and labor required; the lawyer's experience, ability and reputation; the customary fee charged by the Bar for similar services; and the amount involved." *Id.* (internal quotation marks omitted); *accord Lancer Indem. Co. v. JKH Realty Grp., LLC*, 8 N.Y.S.3d 356, 357-58 (2d Dep't 2015). A judge, however, "is not obligated to undertake a line-by-line review of [the prevailing party's] extensive fee application" and may instead "exercise its discretion and use a percentage deduction as a practical means of trimming fat." *Marion S. Mishkin Law Off. v. Lopalo*, 767 F.3d 144, 150 (2d Cir. 2014) (internal quotation marks omitted). Such "rough justice" percentage reductions are "regularly" used "as an efficient means of reducing excessive fee applications." *Id.* (collecting cases).

## B. Attorneys' Fees

As the prevailing party,[2] ZoomInfo seeks $846,363.42 in attorneys' fees. Warshavsky Reply Decl., Am. Exh. 7. While the Court finds that the rates charged, hours billed, and billing

---

[2] There can be no dispute that ZoomInfo is the prevailing party, having both defeated Photon's claim of breach and winning its breach counterclaim. And although Photon focuses on the fact that ZoomInfo won fewer damages for its counterclaim than it sought, Opposition at 1 (referring to the fees ZoomInfo requests as "completely disproportionate to the success it achieved"), this ignores the other half of the case: ZoomInfo does not have to pay any damages at all, despite having faced potentially millions in liability. In any event, ZoomInfo would be the prevailing party even if it had "not proven all of the damages" it sought, having won on liability and more than *de minimis* damages. *Gotlieb v. Taco Bell Corp.*, 871 F. Supp. 147, 156-57 (E.D.N.Y. 1994).

practices used are largely reasonable, it reduces the fee award sought by ten percent for the reasons explained below.

**Rates.** The Court "begins by considering the reasonable hourly rates for the attorneys who worked on this matter," as compared to "the prevailing market rates for counsel of similar experience and skill to the fee applicant's counsel" in "similar cases." *Al Thani v. Hanke*, Nos. 20 Civ. 4765 (JPC), 20 Civ. 8181 (JPC), 2025 WL 1591379, at *5 (S.D.N.Y. June 5, 2025) (internal quotation marks omitted). "Courts in this District have recognized that an attorney's customary billing rate for fee-paying clients is ordinarily the best evidence of the market rate." *Adstra*, 2025 WL 1070034, at *7 (internal quotation marks omitted).

Here, counsel's services were provided at a ▮▮▮▮▮▮ discount off the "standard billing rates that are routinely charged and paid by [their] clients." Warshavsky Decl. ¶ 19. The "fact" that these fees were "below" counsel's "customary billing rates to other clients[] support[s] their reasonableness." *Adstra*, 2025 WL 1070034, at *7. And for work performed in February, March, and May 2023 (in connection with the Second Circuit cross-appeals), counsel "and ZoomInfo engaged in negotiations with respect to additional discounts on legal fees," leading to a further discount of $93,650.08 in fees, or 107.3 hours. Warshavsky Decl. ¶ 24; Warshavsky Reply Decl. ¶¶ 2-3; Warshavsky Reply Decl., Am. Exh. 4.[3] That these discounted rates "were negotiated at arms' length between sophisticated parties" also cuts in favor of finding that the fees sought are reasonable. *Adstra*, 2025 WL 1070034, at *7.

---

[3] Indeed, that ZoomInfo sought and received a discount in its fees *after* this Court found for it on liability and awarded it damages undercuts Photon's suggestion that ZoomInfo "believed it was playing with house money and gave [counsel] free reign to bill unlimited hours and run up excessive costs." Opposition at 13-14.

ZoomInfo's legal fees were mainly billed by one partner, Carrie Longstaff, and one associate, Megan Corrigan.  *See* Warshavsky Decl., Exh. 3.  Ms. Longstaff—who had been of counsel at the onset of this litigation and became partner in 2020—is a patent attorney with almost twenty years of experience handling commercial, contract, class action, trade secrets, and intellectual property cases.  Warshavsky Decl. ¶ 13.  Her hourly rate when first working on this case in 2019 (as of counsel) was $680.00, climbing to $1,250.00 as partner in 2024.[4]  Warshavsky Decl., Exh. 5 ("Hourly Rate Chart").  As ZoomInfo points out, according to a report from Thomson Reuters, Warshavsky Decl., Exh. 10, Ms. Longstaff's rates fall within the range of average billing rates for non-equity partners at Am Law 100 firms in New York City with comparable experience.  Motion at 19.  Indeed, "in this district, partner billing rates in excess of $1,000 are not uncommon in the context of complex commercial litigation."  *Adstra*, 2025 WL 1070034, at *7 (citation modified).  Ms. Corrigan, a 2018 *cum laude* graduate of Fordham University School of Law, has worked on notable commercial cases.  Warshavsky Decl. ¶ 14.  When she joined this case as a second-year associate in 2020, Ms. Corrigan's hourly rate was $485.00, climbing to $1,085.00 as a seventh-year associate in 2025.  Hourly Rate Chart.  As with Ms. Longstaff, Ms. Corrigan's rates "are within the spectrum for hourly rates approved in this district for attorneys at large New York City law firms involved in complex commercial litigation."  *Flatiron Acquisition Vehicle, LLC v. CSE Mortg. LLC*, No. 17 Civ. 8987 (GHW), 2022 WL 413229, at *14 (S.D.N.Y. Feb. 9, 2022) (deeming as reasonable a "range from $405 to $660 for associates" based on work done in 2018 and 2019); *see also* Warshavsky Decl., Exh. 11 (noting that the 75th percentile of billing rates for seventh-year associates at Am Law 100 firms in New York City was $1,229 in 2025).

---

[4] As ZoomInfo explains, Ms. Longstaff did not bill on this matter in 2025.  Motion at 18 n.4.  And counsel "does not seek to recover" fees for the time spent "in connection with the preparation of the instant motion."  Warshavsky Decl. ¶ 23.

Two other partners also worked on this case for ZoomInfo: Michael Matthias and Oren Warshavsky. Mr. Matthias, an equity partner with deep commercial litigation experience who has since retired from the firm, assisted when the case was first brought in California. Warshavsky Decl. ¶¶ 7, 12. His hourly rates were $820.00 in 2019 and $885.00 in 2020, Hourly Rate Chart, well within a reasonable range for partners of his experience. *See Flatiron Acquisition Vehicle*, 2022 WL 413229, at *14 (deeming as reasonable a range "from $742 to $910 for partners" for work done in 2018 and 2019). Mr. Warshavsky's rates present somewhat of a different story. A nationally recognized equity partner with almost thirty years of experience, Warshavsky Decl. ¶¶ 10-11, Mr. Warshavsky charged $1,135.00 in 2019 and $1,680.00 in 2024, Hourly Rate Chart.[5] ZoomInfo acknowledges that Mr. Warshavsky's rates "fall slightly above Thomson Reuters's reported rates for Am Law 100 firms." Motion at 19; *see* Warshavsky Decl., Exh. 10 (noting that the top 1% of comparable equity partners billed $1,639 per hour in 2024). But "while high," those rates "are roughly comparable to rates at similarly sized firms in New York City, which other courts have . . . found reasonable." *Zama Cap. Advisors LP v. Universal Entm't Corp.*, No. 24 Civ. 1577 (MKV), 2025 WL 3525044, at *7 (S.D.N.Y. Dec. 9, 2025) (deeming as reasonable partner rates "rang[ing] from $1,712 to $1,980" and collecting recent cases approving rates similar to or exceeding Mr. Warshavsky's). And as ZoomInfo points out, Mr. Warshavsky "billed just under 5% of the attorney hours on this matter," Motion at 19, even though he "spent far more time" than that "working on this matter," Warshavsky Decl. ¶ 25. The Court agrees that, considering this case's context, Mr. Warshavsky's rates fall within the spectrum of reasonableness, albeit at the high end.

---

[5] Like Ms. Longstaff, Mr. Warshavsky did not bill on this matter in 2025. Motion at 18 n.4.

ZoomInfo also seeks to recover for work done by other professionals, like paralegals, clerks, e-discovery support staff, and research assistants.  Motion at 21-22.  Most of these professionals' rates fall within a reasonable range for support staff at comparable law firms. *Compare* Hourly Rate Chart *with* Warshavsky Decl., Exhs. 8-11.  Photon, however, takes issue with the rates of two professionals in particular: Teresa Blaber, counsel's Paralegal Coordinator who specializes in federal appeals, and Benjamin Fishelman, counsel's senior litigation support coordinator.  Opposition at 22; Warshavsky Decl. ¶ 15.  Ms. Blaber charged $475.00 per hour in 2022 when she began work on the case and $540.00 in 2025; Mr. Fishelman, for his part, charged $495.00 per hour in 2020, the sole year he worked on the case.  Hourly Rate Chart.  While these rates are admittedly high, and under different circumstances, the Court could very well reduce them, *see Oakley v. MSG Networks, Inc.*, No. 17 Civ. 6903 (RJS) (RFT), 2025 WL 3041936, at *7 (S.D.N.Y. Oct. 31, 2025) (reducing similar rates), the Court will decline to do so here.  For one, Mr. Fishelman worked only 14.4 hours on the case, Warshavsky Decl., Exh. 2, and Photon elsewhere points out that "little work" was assigned to support staff, especially before the appeal, Opposition at 13 n.1.  For another, these rates "were actually billed to the client and paid," which is a "strong" reason not to reduce them, *Adstra*, 2025 WL 1070034, at *6-7—particularly after ZoomInfo negotiated a significant discount on appeal, when Ms. Blaber spent almost all of her time, Warshavsky Decl., Exh. 4; Warshavsky Reply Decl., Am. Exhs. 2, 4.  And any unreasonableness in these professionals' rates is mitigated by the Court's across-the-board reduction in fees of ten percent, for the reasons discussed below.

In contesting the reasonableness of these rates, Photon argues that "this matter was not complex commercial litigation" but instead "a simple breach of contract action involving a routine agreement valued at ███████████████  Opposition at 20.  Yet however simple Photon thought

this case would be when it filed suit in California state court over seven years ago, it turned out to be anything but.  The parties "vigorously litigated" this case, *Adstra*, 2025 WL 1070034, at *7, through jurisdictional disputes, a motion to dismiss, discovery, multiple settlement efforts, cross-motions for summary judgment, a bench trial, and ultimately cross-appeals.  Because the "high litigation costs" at hand are "a function of its litigation strategy rather than unreasonable billing" on ZoomInfo's part, Photon cannot now "complain that fees [are] unreasonable after it" played a role in "dr[iving] up the cost and complexity of litigation." *Id.* (internal quotation marks omitted).  In light of this case's complexity and counsel's experience, the Court finds that the requested attorneys' and other professionals' rates are reasonable.

**Hours.**  "In reviewing a fee application, the district court examines the particular hours expended by counsel with a view to the value of the work product of the specific expenditures to the client's case." *Luciano v. Olsten Corp.*, 109 F.3d 111, 116 (2d Cir. 1997).  The court "should exclude excessive, redundant or otherwise unnecessary hours," *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999), viewed from the perspective of "the reasonable number of hours required by the case," *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011).  What matters "is not whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992).

As for the time ZoomInfo spent litigating this case, Photon makes two main arguments for why reducing fees is appropriate, although neither persuades.  First, Photon argues that "ZoomInfo's counsel significantly overstaffed this non-complex case, resulting in inefficiency, duplication of effort, excessive conferences, and substantial overbilling." Opposition at 16-17.  To support that argument, Photon points to the sheer number of professionals assigned to this case:

11

fifteen, including litigation support staff, clerks, legal researchers, and paralegals. *Id.* at 16. But the sole fact that multiple people worked on a case lasting over half a decade says little about whether those people overbilled or duplicated efforts. After all, there can be little dispute that Ms. Longstaff (the partner) and Ms. Corrigan (the associate) worked the vast majority of time billed for this case, *see* Warshavsky Reply Decl., Am. Exhs. 2-3, and courts have quite correctly found "unpersuasive" the claim that "multiple attorneys" working on the same case is necessarily "duplicative," *COR, LLC v. First Standard Fin. Co.*, No. 17 Civ. 2190 (PAE), 2019 WL 1090480, at \*4 (S.D.N.Y. Mar. 8, 2019). Indeed, when a matter has been "handled principally by one partner and one associate," the fact that "other attorneys [or professionals] may have contributed at discrete times does not lead" to the conclusion that "there was overstaffing." *28th Highline Assocs., LLC v. Roache*, No. 18 Civ. 1468 (VSB) (KHP), 2019 WL 10632851, at \*5 (S.D.N.Y. July 29, 2019), *report and recommendation adopted*, 2020 WL 5659465 (S.D.N.Y. Sept. 23, 2020). Just so here: as ZoomInfo correctly observes, "Photon does not point to any billing entries suggesting duplications." Reply at 2; *see also* Opposition at 17 (suggesting only that "overstaffing leads to . . . *potential* duplication of work" (emphasis added)). Photon's first hours-based argument fails.

Second, and more to the point, Photon argues "that ZoomInfo's counsel spent an excessive and unreasonable amount of time performing the work associated with this action." Opposition at 12. In total, ZoomInfo billed a total of 1,212.8 hours on this case, of which 1,116 were attorneys' hours. Warshavsky Decl., Exhs. 2, 3. (Factoring in the hours discounted for the cross-appeal, ZoomInfo billed a total of 1105.5 hours, of which 1,029 were attorneys' hours. Warshavsky Reply Decl., Am. Exhs. 2-3.) "Courts in the Second Circuit have found thousands of hours over a span of years to be reasonable in cases like this one which involved extensive discovery and motion practice, as well as a bench trial." *Capax Discovery, Inc. v. AEP RSD Investors, LLC*, No. 1:17-

12

cv-00500-CCR, 2023 WL 140528, at *7 (W.D.N.Y. Jan. 10, 2023) (approving 2,016.9 hours as reasonable under comparable circumstances and collecting cases finding hours far exceeding those here to be reasonable).

Photon particularly objects to the 240.4 hours ZoomInfo spent on summary judgment, the 369.2 hours spent on the bench trial, and the 294.3 hours spent on the appeal. *See* Opposition at 12-15; Warshavsky Decl., Exh. 4 (noting these hours); *see also* Opposition at 12 ("Perhaps the most glaring example of BakerHostetler's excessive billing is the time and money it spent on the one-day bench trial on damages."). Although a court in this Circuit has held that 241.5 hours spent on a straightforward summary judgment motion was excessive, *see Nike, Inc. v. Top Brand Co.*, No. 00 Civ. 8179 (KMW) (RLE), 2006 WL 2946472, at *7 (S.D.N.Y. Feb. 27, 2006), *report and recommendation adopted*, 2006 WL 2884437 (S.D.N.Y. Oct. 6, 2006), ZoomInfo persuasively points out that this case involved *cross-motions* for summary judgment, and another court has held that in the cross-motion context, "241 hours for the summary judgment briefing . . . is not excessive," *Ctr. for Popular Democracy v. Bd. of Governors of Fed. Reserve Sys.*, No. 16 Civ. 5829 (NGG) (VMS), 2021 WL 4452202, at *13 (E.D.N.Y. Sept. 29, 2021). *Cf. Brady v. Wal-Mart Stores, Inc.*, 455 F. Supp. 2d 157, 212 (E.D.N.Y. 2006) (finding 180 hours to be reasonable "for experienced attorneys to spend opposing a [summary judgment] motion that did not raise new or complex legal issues"). The Court further agrees with ZoomInfo that Photon's focus on ZoomInfo billing roughly 370 hours for a single-day bench trial is myopic, as it "ignores that 'trial' work included: pre-trial briefing, post-trial briefing, ZoomInfo's motions *in limine*, opposing Photon's motions *in limine*, determining exhibits, drafting declarations for examination by direct testimony for ZoomInfo's two witnesses, preparing for cross-examination of Photon's two witnesses (one of whom was not previously identified), preparing ZoomInfo's witnesses to testify

13

at trial, and trial itself." Reply at 6; *cf. EZ Pawn Corp. v. City of New York*, No. 16 Civ. 3852 (PKC), 2024 WL 3431007, at \*5 (E.D.N.Y. July 15, 2024) (finding that 272.6 hours preparing for a jury trial was reasonable even though the case settled weeks before trial). And as for the appeal, after accounting for the discount ZoomInfo received, it seeks to recover for only 187 hours. Reply at 7; Warshavsky Reply Decl., Am. Exh. 4. For an appeal with "a long and involved procedural history"—even one that "arose from a fairly straightforward contract"—such hours are reasonable. *Genger v. Genger*, No. 14 Civ. 5683 (KBF) (DF), 2017 WL 9771814, at \*7 (S.D.N.Y. May 22, 2017), *report and recommendation adopted*, 2017 WL 9771807 (S.D.N.Y. May 30, 2017). Ultimately, based on this Court's "familiarity" and "experience with the case," it finds that the hours ZoomInfo's counsel expended are reasonable. *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992) (internal quotation marks omitted).

**Billing Practices and Reduction.** Despite the relative reasonableness of the attorneys' rates and hours expended, the Court finds that an across-the-board reduction in fees of ten percent is warranted. That is so for three main reasons.

*First*, the Court has concerns that some of the work the attorneys billed in this case could have been completed by other professionals. A court may apply a percentage reduction "for work that should have been delegated to more junior attorneys or paralegal staff." *China AI Cap. Ltd. v. DLA Piper LLP*, No. 21 Civ. 10911 (VM) (VF), 2025 WL 2466633, at \*2 (S.D.N.Y. May 22, 2025), *report and recommendation adopted*, 2025 WL 3204368 (S.D.N.Y. Nov. 17, 2025). Here, "the billing records include time spent by attorneys on clerical or menial tasks that should have been delegated to more junior attorneys or paralegal staff." *Id.* at \*9. For instance, both Ms. Longstaff, a partner, and Ms. Corrigan, an associate, spent time on administrative tasks like checking on the status of binder deliveries and booking conference rooms. Warshavsky Decl.,

14

Exh. 6 (Longstaff time entry on June 17, 2022; Corrigan time entry on June 13, 2022). Such inefficiencies call for a percentage reduction in fees. *See China AI Cap.*, 2025 WL 2466633, at *10 (collecting cases).

*Second*, ZoomInfo's attorneys billed for a not-insignificant number of intra-office conferences. *See generally* Warshavsky Decl., Exh. 6. Indeed, Ms. Longstaff and Ms. Corrigan "routinely recorded time for internal meetings and calls with each other," along with the other attorneys on the case. *Wright v. Ethical Culture Fieldston Sch.*, No. 23 Civ. 1874 (JPO) (SLC), 2025 WL 2616578, at *15 (S.D.N.Y. July 15, 2025), *report and recommendation adopted*, 2025 WL 2180448 (S.D.N.Y. Aug. 1, 2025). Such "excessive" intra-office communications, while not a cardinal sin, call for a "modest" overall reduction. *Id.* at *15-16.

*Third*, and most importantly, ZoomInfo's counsel is guilty of block billing, that is, submitting "composite entries that do not allocate how much time was spent on individual tasks." *Id.* at *15. Photon points to some particularly egregious examples. Opposition at 18 (citing Corrigan time entries on September 25, 2020, and June 3, 2022). And while block-billing "does not automatically preclude recovery for the hours billed by counsel," reductions are appropriate where, for example, "the block billing involved aggregating tasks that were not all compensable." *Wright*, 2025 WL 2616578, at *15 (internal quotation marks omitted). That is the case here, as "the inclusion of time for tasks such as internal conferences that are not otherwise compensable" somewhat "impedes" the Court's "ability to discern" the time that *is* "reasonably compensable." *Id.*; *accord Al Thani*, 2025 WL 1591379, at *6 ("Although block-billing is not *per se* unreasonable, the commingling of compensable and uncompensable tasks in single time entries here hampers the Court's ability to review the reasonableness of the fees requested."). A reduction "is warranted to account for th[ese] billing issues." *Wright*, 2025 WL 2616578, at *16.

At bottom, "[i]n light of the complexity of this case," including "the substantial motion practice" involved, the Court concludes that "only a modest reduction of ten percent across the board is appropriate" to account for these concerns. *Capax Discovery*, 2023 WL 140528, at *7 (reducing fees by ten percent in a comparable complex case). The Court's conclusion recognizes "the possibility of minor inefficiencies in the work performed that by their nature may not be clear to a court on review of time sheets," and that a reduction of ten percent "is all that is needed to assure that the fees billed . . . are consistent with a rigorous application of the standard of reasonableness." *COR*, 2019 WL 1090480, at *5. The Court thus awards ninety percent of ZoomInfo's requested $846,363.42 in fees, or $761,727.08.

## C. Costs

Fees awards "include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998) (internal quotation marks omitted). Expenses "such as service of process, photocopy fees, notary fees, teleconferencing services, PACER fees, Court Alert fees, . . . and transportation costs" are "the types of costs that are routinely awarded by courts." *China AI Cap.*, 2025 WL 2466633, at *13-14. "As with attorneys' fees, the requesting party must substantiate the request for costs." *Guo v. Tommy's Sushi, Inc.*, No. 14 Civ. 3964 (PAE), 2016 WL 452319, at *3 (S.D.N.Y. Feb. 2, 2016). Costs "for which a claimant provides extrinsic proof, such as invoices or receipts" are "sufficiently substantiated," as are those for which a "sworn statement or declaration under penalty of perjury that certain amounts were expended on particular items" is provided. *Id.*

ZoomInfo seeks total costs of $21,983.81, Reply at 9, for expenses such as printing, filing fees, and transportation, Warshavsky Reply Decl., Exh. 16. Photon does not argue that any category of costs claimed are of a kind that should not be reimbursed, nor could it: the costs for

16

which ZoomInfo "seek[s] reimbursement are the types of costs that are routinely awarded by courts." *China AI Cap.*, 2025 WL 2466633, at *13-14. Instead, Photon argues that ZoomInfo failed to "submit[] any supporting documentation, such as invoices and receipts, for its claimed costs." Opposition at 26. But this argument fails: for one, ZoomInfo *did* submit invoices and receipts for certain costs in its original motion, Warshavsky Decl., Exh. 13 (printer invoices), and included still more in its reply, Warshavsky Reply Decl., Exh. 15 (various shipping invoices and transportation receipts). For another, and more fundamentally, invoices and receipts are not necessary to substantiate costs: "a sworn statement or declaration under penalty of perjury that certain amounts were expended on particular items" suffices. *Rosales v. Gerasimos Enters. Inc.*, No. 16 Civ. 2278 (RA), 2018 WL 286105, at *2-3 (S.D.N.Y. Jan. 3, 2018); *see also China AI Cap.*, 2025 WL 2466633, at *13 (collecting cases). Just so here. *See* Warshavsky Decl. ¶ 20; Warshavsky Reply Decl. ¶¶ 9-11; *see also* Warshavsky Reply Decl., Exh. 16 (chart detailing costs incurred). The Court thus awards ZoomInfo's claimed costs of $21,983.81 in full. *See COR*, 2019 WL 1090480, at *5 (despite applying a fee reduction of five percent, finding "no occasion to prune any part of [counsel's] request as it pertains to costs").

* * *

After applying a ten percent reduction to the $846,363.42 requested in fees, and granting the full $21,983.81 in costs, the Court awards ZoomInfo a total of $783,710.89. The Court denies ZoomInfo's motion for oral argument on the fees-and-costs motion, Dkt. 233, as moot.

### III.  Motions to Seal

The parties further seek to seal certain aspects of their papers supporting and opposing ZoomInfo's motion for attorneys' fees and costs. *See* Dkts. 215, 224, 229. In particular, the parties "seek[] to redact information that relates to [1] ZoomInfo's confidential security measures and

pricing information for its services, [2] confidential and licensed materials relating to attorney hourly rates from BakerHostetler's vendor West Publishing Corporation d/b/a Thomson Reuters, and [3] BakerHostetler invoices containing confidential information that may [be] subject to attorney-client privileges and work product protections." Dkt. 215 at 1.  The Court agrees that redacting the first category of information is appropriate for reasons already expressed in this litigation, *see, e.g.*, Dkt. 209, and that redacting the third category of information is appropriate because "[p]arties are generally entitled to assert privilege and redact records in connection with motions for fees," including "certain portions of the billing records," *Bank of N.Y. Mellon v. Bell*, No. 3:11-CV-1255 JAM, 2015 WL 778668, at *2 (D. Conn. Feb. 24, 2015).  But the Court takes issue with redacting the second category of information, involving Thomson Reuters's hourly rates.  While that company's interest in "business secrecy" is weighty, *Valassis Commc'ns, Inc. v. News Corp.*, No. 17 Civ. 7378 (PKC), 2020 WL 2190708, at *4 (S.D.N.Y. May 5, 2020), the Court "relied upon" its documents in resolving this motion, thus triggering a presumption of access, *Newsday LLC v. Cnty. of Nassau*, 730 F.3d 156, 164 (2d Cir 2013).  And indeed, this Court has relied upon similar data in resolving past motions for attorneys' fees—without then redacting such data.  *See Al Thani*, 2025 WL 1591379, at *5.  So while the Court grants the parties' motions to seal as to the first and third categories of information, it will require further briefing on the question of sealing Thomson Reuters's data.

### IV. Conclusion

For the above reasons, the Court awards ZoomInfo $783,710.89 in attorneys' fees and costs.  The parties' motions to seal are granted in part; the parties shall have until February 6, 2026 to explain why sealing Thomson Reuters's data is appropriate.  If no submission is made by February 6, 2026, the Court will deny the request to seal the Thomson Reuters data without further

notice.  The Clerk of Court is respectfully directed to close Docket Numbers 215, 216, 224, 229, and 233.

This Opinion and Order shall initially be filed under seal.  The parties shall have until February 6, 2026 to file any proposed redactions to this Opinion and Order, as well as a letter justifying why those redactions are justified under *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006).  The parties shall submit a single set of proposed redactions but may explain any disagreements in their joint letter.

SO ORDERED.

Dated: January 30, 2026
       New York, New York

_____
JOHN P. CRONAN
United States District Judge

19